NOWACKI *v.* ESCANABA MANUFACTURING CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—EVIDENCE, ALTHOUGH CONTROVERTED, SUFFICIENT TO JUSTIFY FINDING OF DEPARTMENT.

Evidence that a deceased workman was, at the time of his accidental death, an employee of defendant's subcontractor who was not under the workmen's compensation act, although controverted, *held*, sufficient to justify the finding of the department of labor and industry that defendant was liable, under said act as amended by section 10, subd. *a*, Act No. 173, Pub. Acts 1921, to deceased's. dependents.[1]

Certiorari to Department of Labor and Industry. Submitted January 20, 1925. (Docket No. 51.) Decided April 3, 1925.

Josephine Nowacki and others presented their claim for compensation against the Escanaba Manufacturing Company for the accidental death of their decedent in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*H. J. Rushton* (*Ryall & Frost,* of counsel), for appellant.

*Doyle & Barstow,* for appellees.

FELLOWS, J. It is not denied that plaintiffs' decedent met his death on January 18, 1923, while engaged as an employee in logging operations. Dependency of plaintiffs is not denied. The denial of liability is based on defendant's claim that decedent was not its employee or the employee of its contractor or subcontractor. The Escanaba Manufacturing Com-

---

[1] Workmen's Compensation Acts, § 114.

On employees of subcontractors as employees within meaning of workmen's compensation acts, see note in L. R. A. 1917D, 148.

pany, a Missouri corporation, authorized to do business in this State and operating under the workmen's compensation act, was closely connected with the Escanaba Veneer Company, a Michigan corporation. There seems to have been to a considerable degree common ownership and operation, the Veneer Company using the grade of timber adaptable to manufacturing its product, and the Manufacturing Company the balance. It is defendant's claim that on January 1, 1923, it ceased operating in Michigan and transferred its holdings here to the Steel-Wallace Corporation, a Michigan corporation; that the Veneer Company contracted with one Peter Doutre to do logging for it; that he in turn subcontracted with one Grownoski for a part of the work and that decedent was employed by Grownoski. Defendant gave quite positive testimony to sustain its claim, but we do not think it can be said that it was undisputed. Mr. Grownoski was called as a witness, and, after testifying to the circumstances of the accident and saying that decedent was working for defendant, gave the following testimony:

"*Q.* You say he was working for the Escanaba Manufacturing Company; what is your reason for saying that?

"*A.* The billing or shipping book for billing the cars had the name of that company in that book, the same name. I had the checks sent to me and they showed the same name.

"*Q.* As I understand it you sent the report of the men's time in, for yourself and the men, that you sent this report into the Escanaba Manufacturing Company, of how much was coming to you and how much was coming to each man, and the Escanaba Manufacturing Company then sent back a check to you to cover this amount?

"*A.* Yes, sir.

"*Q.* Was the pay of these men included in the check sent to you?

"*A.* Yes, I made the time altogether, only for each

man so much, and they sent me a check for the whole amount."

The defendant produced a witness who testified that the check was given by the Veneer Company, but the check was not produced. If the testimony of Mr. Grownoski was believed by the commission, it established that the timber was being shipped to the defendant and that Mr. Grownoski sent his pay roll to defendant and it issued its check to pay the employees, including the decedent, who were getting out the timber. There was also testimony that one Judson, who made the arrangement with Doutre, was acting for both the Veneer Company and the Manufacturing Company. He was present when the accident occurred and his starting the team too quickly had something to do with it. Neither Doutre nor Grownoski was operating under the act. We think the facts above related justified the commission in concluding that Grownoski was a subcontractor of defendant with its permission and brought the case within the provisions of section 10, subd. *a*, Act No. 173, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5430 [2]).

The award will be affirmed, with costs.

McDonald, C. J., and Clark, Bird, Sharpe, Moore, Steere, and Wiest, JJ., concurred.