WILLIAMS v LANG (AFTER REMAND)

Docket No. 59443. Argued April 11, 1978 (Calendar No. 3).—Decided
    January 5, 1979. Decided after remand December 10, 1982.
        Bobby V. Williams claimed workers' compensation benefits for
        injuries sustained in the course of his employment with Han-
        sell Lang, a "contract" service station dealer for the Gulf Oil
        Company, and Dewey Gregory, who operated an automatic
        transmission repair service at Lang's station. United States
        Fidelity and Guaranty Company was Gregory's insurer. Lang
        was uninsured and disappeared shortly after the accident. The
        plaintiff claimed that Gulf and Bole Oil Company, a Gulf
        distributor, were statutory employers, liable to him as employ-
        ers under the workers' compensation act as the principals of
        Lang. The Travelers Insurance Company and State Farm Fire
        & Casualty Company were the insurers of Gulf and Bole,
        respectively. The defendants contended that the plaintiff was
        Lang's partner. The hearing referee and the Workers' Compen-
        sation Appeal Board dismissed the claims against Lang and
        Gregory without prejudice and held that Gulf and Bole were
        not statutory employers, but did not expressly determine the
        relationship between the plaintiff and Lang. The Court of
        Appeals, D. C. Riley, P.J., and J. H. Gillis and R. M. Maher, JJ.,
        denied leave to appeal (Docket No. 30727). The Supreme Court
        vacated the board's order and remanded the case to the board
        for further findings, retaining jurisdiction. 404 Mich 639 (1979).
        On remand, the board held that the plaintiff was an employee
        of Lang.
            In an opinion by Justice Ryan, joined by Chief Justice Fitz-
        gerald and Justices Coleman and Kavanagh, the Supreme
        Court *held:*
            The workers' compensation act provides that a principal is
        liable to pay compensation to employees who suffer injury in
        the course of the performance of *any* work undertaken by the

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 630.
[2, 3] 43 Am Jur 2d, Insurance § 721.
    81 Am Jur 2d, Workmen's Compensation § 175.
    82 Am Jur 2d, Workmen's Compensation § 412.

principal. It does not say or mean that the principal is liable to pay only if the work undertaken is a part of the usual or normal business operation of the principal, and the case so holding was incorrectly decided. However, under the constitution and case law, upon determining that the Workers' Compensation Appeal Board has applied an erroneous legal standard, the Supreme Court must reverse and remand the case to the board for resolution of the factual issues in the light of the correct legal standard.

Justice Williams, joined by Justices Levin and Moody, concurring, would hold that Gulf was a statutory employer of the plaintiff under the workers' compensation act and is liable to the plaintiff for workers' compensation benefits, and that no evidence was presented which would indicate that Bole was the plaintiff's statutory employer.

1. The workers' compensation act provides that where a principal employer who is subject to the act contracts with an employer not subject to the act, the principal is the statutory employer of the employees of the non-insured employer and is liable to pay workers' compensation benefits for injuries to the employees which occur during the execution by or under the contractor of any work undertaken by the principal. The language of the statute is plain, certain, and unambiguous, requiring no interpretation. Liability is not determined by the character of the work undertaken.

2. The Legislature, in enacting the statute, intended to prevent evasion of the workers' compensation system by principals subject to the act through the use of uninsured contractors and to lift the financial burden of injured employees of such contractors. The provisions of the statute further these purposes.

3. Previous cases which have considered the statutory employer relationship have allowed a "part of the business" test to be applied to determine whether the "work undertaken" rendered the principal liable to pay compensation. The cases implied that an *ultra vires* act would not impose liability. However, "work undertaken by the principal" simply means work which a principal contracts for or undertakes with a contractor. The one case which found that the work which resulted in injury to a contractor's employee was not part of the principal's business was wrongly decided. The "part of the business" test does not appear in the statute. The correct test is: (1) whether a principal covered by the act contracted with an employer not covered by the act, and (2) whether the employee of the uninsured contractor was injured during the

execution of work under the contractor which had been undertaken by the principal.

4. In this case, Gulf and Bole were employers insured under the act. Lang was an employer not insured under the act. Gulf entered into a contract with Lang, but Bole did not. The plaintiff was employed by Lang and was injured while working for Lang. The type of work which the plaintiff was performing for Lang at the time of the injury was the type of work contemplated in the contract between Gulf and Lang and thus was work undertaken by Gulf, the principal. No evidence was presented which indicated that there was any undertaking by Bole of repair work to be executed by or under Lang. Therefore, Gulf was a statutory employer of the plaintiff, and Bole was not.

Reversed and remanded.

*Roman v Delta Broadcasting Co,* 334 Mich 669; 55 NW2d 147 (1952), overruled.

### OPINION OF THE COURT

See headnote 2.

1. WORKERS' COMPENSATION — APPEAL.

   The Supreme Court, upon determining that the Workers' Compensation Appeal Board has applied an erroneous legal standard, must reverse and remand a case to the board for resolution of the factual issues in the light of the correct legal standard (Const 1963, art 6, § 28).

### CONCURRING OPINION BY WILLIAMS, J.

2. WORKERS' COMPENSATION — STATUTORY EMPLOYERS — PRINCIPAL AND AGENT.

   *A principal employer who is subject to the workers' compensation act and who contracts with an employer who is not subject to the act to execute work undertaken by the principal is the statutory employer of the employees of the uninsured employer, liable to pay workers' compensation benefits to employees who are injured during the execution of the work (MCL 418.171; MSA 17.237[171]).*

3. WORKERS' COMPENSATION — STATUTORY EMPLOYERS — PRINCIPAL AND AGENT — EMPLOYMENT RELATIONSHIP.

   *The test to determine whether a principal employer subject to the workers' compensation act who contracted with an employer not subject to the act is liable to pay workers' compensation benefits to employees of the uninsured employer is whether the*

*employee was injured during the execution of work under the uninsured employer which had been undertaken by the principal, not whether the work involved was part of the business of the principal (MCL 418.171; MSA 17.237[171]).*

*Anthony M. Calderone* for plaintiff.

*Richard Craig* (by *Kenneth J. DeVries)* for defendants Bole Oil Company and State Farm Fire & Casualty Company.

*Lilly, Piatt, Doyle & Kragt* for defendants Gulf Oil Corporation and Travelers Insurance Company.

*John A. Scott* for defendants Dewey's Automatic Transmission and United States Fidelity and Guaranty Company.

AFTER REMAND

RYAN, J. I concur in Justice WILLIAMS' conclusion that MCL 418.171; MSA 17.237(171), does not say and does not mean that the principal is liable to pay compensation only if the work undertaken is a part of the usual or normal business operation of the principal. The principal, as the statute says, is liable to pay compensation when the injury suffered occurs in the course of the performance of *"any* work undertaken by the principal". (Emphasis added.) I agree that *Roman v Delta Broadcasting Co,* 334 Mich 669; 55 NW2d 147 (1952), was incorrectly decided. In applying its rule in this case, the Court of Appeals was led to declare an incorrect legal standard.

I disagree, however, with that portion of part VI of my brother's opinion in which, after carefully marshaling the evidence, he concludes, as a factual matter, that "the undertaking between Gulf and Lang specifically included * * * mechanical repair services" and that therefore Gulf is "a statutory

employer of the plaintiff" and "Bole is not such an employer".

Although recognizing that "it would be possible to remand the matter to the WCAB to act under correct legal principles herein outlined * * *, since we have already once remanded the matter to the WCAB and since the matter is 10 years old, judicial economy suggests that it would be better [for this Court] to render a decision to resolve this long-running litigation".

The Michigan Constitution makes it clear that the Workers' Compensation Appeal Board is exclusively empowered to make factual determinations in workers' compensation cases and that this Court is absolutely without authority to do so. Const 1963, art 6, § 28. *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975). The constitution makes no exception for the age of the case or considerations of "judicial economy".

When this Court finds that the WCAB has applied an erroneous legal standard, the correct procedure is to reverse and remand to the WCAB. *Burke v Ontonagon County Road Comm,* 391 Mich 103; 214 NW2d 797 (1974); *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974); *Zaremba v Chrysler Corp,* 377 Mich 226; 139 NW2d 745 (1966).

While it may be efficient and convenient for the Court to do the WCAB's factfinding in this case, it is unconstitutional to do so. I would remand to the Workers' Compensation Appeal Board for resolution of the factual issues in light of the legal standard enunciated in parts I through V of Justice WILLIAMS' opinion.

FITZGERALD, C.J., and KAVANAGH and COLEMAN, JJ., concurred with RYAN, J.

WILLIAMS, J. The significant issue in this case is the proper interpretation of the "statutory employer" provision of the Worker's Disability Compensation Act, MCL 418.171; MSA 17.237(171).[1] The specific legal question is whether the Workers' Compensation Appeal Board properly relied on *Roman v Delta Broadcasting Co,* 334 Mich 669; 55 NW2d 147 (1952), 1C Larson, Workmen's Compensation Law, § 49.12, and various Virginia cases in

---

[1] MCL 418.171; MSA 17.237(171) provides:

"(1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made *for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him;* and if compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. A contractor shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract.

"(2) If the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor. The employee shall not be entitled to recover at common law against the contractor for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employee of such contractor, may recover the amount so paid in an action against such contractor." (Emphasis added.)

The predecessor to this provision was MCL 411.10; MSA 17.150. It contained the same operative language: "for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him".

holding that there was no statutory employer. The ultimate mixed question of law and fact is whether an employee of an uninsured gasoline service station, injured during a test drive of a car under repair, was a "statutory employee" of, and entitled to workers' compensation benefits from, the Gulf Oil Company with whom the service station had a contract or from the Bole Oil Company which was the middleman between the service station and Gulf.

We hold that the correct precedent is *Burt v Munising Woodenware Co,* 222 Mich 699; 193 NW 895 (1923), as interpreted by *DeWitt v Grand Rapids Fuel Co,* 346 Mich 209; 77 NW2d 759 (1956), and *Woody v American Tank Co,* 49 Mich App 217; 211 NW2d 666 (1973), *lv den* 391 Mich 766 (1974), not *Roman.* We further hold that the references to Larson, *supra,* and the Virginia cases are inapplicable, because of the difference between the Michigan WDCA and the Virginia act.[2] Finally, in order to achieve a determination in this case which originated in 1970, we hold that Gulf was a statutory employer of, and is liable to, plaintiff for compensation benefits and that Bole was not.

## I. FACTS

On November 29, 1968, plaintiff was injured in

[2] The statutes use different language in creating the standard by which a principal is defined as a statutory employer. Professor Larson has stated that:

"Practically all of the cases of general interest interpreting this type of statute are addressed to one question: When is the subcontracted work part of the regular business of the statutory employer? The statutory language lying behind this question varies somewhat. Some acts speak of work which is 'part of or process in' the employer's trade or business * * *; some use the phrase 'any work which is part of his trade, business or occupation'; and there are many other variants". 1C Larson, Workmen's Compensation Law, § 49.12.

Obviously there is no language to this effect in MCL 418.171; MSA 17.237(171).

an automobile accident during the test driving of a customer's car which he had repaired while working at Lang's Gulf Service. He suffered a severe skull fracture, resulting in brain damage and the loss of the industrial use of his arms and legs. The plaintiff asserted that he was directly employed by Hansell Lang, an uninsured contractor, who had disappeared before this case began, and, thus, was not available to give testimony. He filed for workers' compensation benefits from Gulf and its insurer, Travelers Insurance Company, and also from Bole and its insurer, State Farm Fire & Casualty Company, as well as from Lang, who was uninsured. In filing for benefits, he argued that both Gulf and Bole were statutory employers under the WDCA.[3] Alternatively, he claimed that he was employed by Dewey Gregory, doing business as Dewey's Transmission Service.

The referee and the WCAB held that Gulf and its distributor, Bole, were not statutory employers. As already indicated, the WCAB relied on *Roman,* Larson, *supra,* and several Virginia cases. The WCAB also concluded that there was insufficient evidence to find that Dewey's Automatic Transmission was an employer of the plaintiff.

The Court of Appeals denied leave.

We granted leave to appeal and following argument held:

"The controlling WCAB opinion made no reference whatsoever to any of the evidence concerning the relationship between Williams and Lang. It, therefore, does not appear that the WCAB considered the evidence

---

[3] See fn 1.

bearing on their relationship or made any determination as to its sufficiency or a finding in that regard.

\* \* \*

"We granted leave to appeal to consider whether Bole or Gulf, or both, are statutory employers, *i.e.,* whether Lang, who sold Gulf products under the name 'Gulf', had contracted 'for the execution' 'of the whole or any part of any work undertaken by' Bole or Gulf so that one or both are liable to Williams as a person 'employed in the execution of the work' ". 404 Mich 645-647.

In *Williams,* we stated that:

"Our grant of leave indicates that we may take a view of the law different than reflected in the decision of the WCAB. Therefore, Bole or Gulf may be statutory employers liable to pay compensation to Williams if it were determined that Lang had employed him.

"Since the question whether Williams is an employee of Lang may be determinative, and there is evidence from which the WCAB could find that he was, and it does not appear that the WCAB decided that the evidence is insufficient to support such a determination, we vacate the order of the WCAB and remand to it for further findings, retaining jurisdiction." 404 Mich 639, 645-647; 273 NW2d 448 (1979).

On remand, the WCAB found that the plaintiff was an employee of Lang.

The record indicates that an owner of an unoccupied service station building was contacted by either Lang or Bole about leasing his property as a Gulf service station. After entering into a lease with Lang, the owner entered into an agreement with Gulf which allowed Gulf to install gas pumps, lights, and a Gulf sign. This equipment was then leased by Gulf to Lang for one dollar per year.

Gulf also supplied Lang with a contract of sale for petroleum products, a commodity schedule for

the sale of gasoline, a reimbursement agreement, and a credit card agreement.

Testimony indicated that Bole distributed Gulf gasoline on a consignment basis and sold other Gulf products directly to Lang, who was characterized by Gulf as a contract dealer.[4] As a contract dealer supplied with petroleum products by Bole, Lang was also given a line of credit by Gulf so that he could purchase accessories like tires and batteries for retail sale.

## II. STATUTORY INTERPRETATION

Our major task is to interpret MCL 418.171;

---

[4] In the instant case, the issue of the status of Gulf arises in part because of the distribution system employed by oil companies like Gulf to sell their automotive and petroleum products to their customers. In many ways, this distribution system is unique. It is important to note that this system has experienced some change because of the introduction of self-service stations. Nevertheless, the following summary accurately describes the system in effect at the time of plaintiff's work-related injuries:

"[Oil] companies normally operate, in each local distribution area, through a wholesale distributor or dealer who handles the oil products of one major producer exclusively, receiving the bulk or packaged product from the producing company, storing it temporarily at a central tank farm or warehouse, and distributing it as needed to the retailers, service station operators who normally sell the gasoline, oil, and perhaps other products, of only one of the major producers and who display on the service station premises the signs and advertising matter of the producer. Advertising, both at the point of sale and elsewhere, is normally in terms of the 'brand-name' product rather than of the particular service station, especially since a major group of customers aimed at is the traveling public unlikely to be familiar with the local operator. And since the 'free services' offered are admittedly a factor of prime importance in attracting the retail customer, such 'brand-name' advertising is likely to be directed not only to the virtues of the product, but to the courtesy and helpfulness of the dealer, who is necessarily identified as the producer-distributor's representative.

"This distribution system has grown up primarily as the result of economic factors and with little relationship to traditional legal concepts in the field of master and servant, so that it is perhaps not surprising that attempts by the courts to discuss the relationship in the standard terms have led to some difficulties and confusion."

Anno: *Gasoline Dealer—Status,* 83 ALR2d 1282, 1284. See, also, Comment, *Master and Servant—The Filling Station Operator as an Independent Contractor,* 38 Mich L Rev 1063 (1940).

MSA 17.237(171).[5] This section defines who is, and the liability of, a "statutory employer".

Before analyzing the statute section itself, it is well to review the applicable rules of statutory construction. The general rule of statutory construction was stated by this Court in *Grand Rapids v Crocker,* 219 Mich 178, 182-183; 189 NW 221 (1922), as follows:

"There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."

We recently repeated this *Crocker* quotation with approval in *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971).

Furthermore, we said in *MacQueen v City Comm of Port Huron,* 194 Mich 328, 342; 160 NW 627 (1916):

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for con-

---

[5] See fn 1.

struction, or attempted interpretation to vary such
meaning."

In addition to these general rules, there exists
the rule that a remedial statute such as the
WDCA must be construed liberally to achieve its
legislative objectives. *Palazzolo v Bradley,* 355
Mich 284, 289; 94 NW2d 203 (1959); *Sheppard v
Michigan National Bank,* 348 Mich 577; 83 NW2d
614 (1957).

## III. STATUTORY ANALYSIS

### A. *The Statute*

The operative language of the "statutory em-
ployer" or "contracting under" provision, MCL
418.171; MSA 17.237(171),[6] reads as follows:

"(1) If any employer subject to the provisions of this
act, in this section referred to as the principal, con-
tracts with any other person, in this section referred to
as the contractor, who is not subject to this act or who
has not complied with the provisions of section 611, and
who does not become subject to this act or comply with
the provisions of section 611 prior to the date of the
injury or death for which claim is made *for the execu-
tion by or under the contractor of the whole or any part
of any work undertaken by the principal, the principal
shall be liable to pay to any workman employed in the
execution of the work any compensation under this act
which he would have been liable to pay if that work-
man had been immediately employed by him".* (Empha-
sis added.)

While this provision consists of a fairly lengthy
sentence, the various parts do fall together for the
purposes of this case to reveal a clear and simple

[6] See fn 1.

thought. The following language is a fair conden-
sation:

"If [the principal, an employer covered under WDCA,]
contracts with [a contractor, a non-covered employer,
and an employee of the contractor makes a claim for
injury] for the execution by or under the contractor
* * * of any work *undertaken by the principal,* the
principal shall be liable [for WDCA benefits]." (Empha-
sis added.)

## B. *Plain, Certain, Unambiguous*

When this Court examined this statutory provi-
sion in the leading case, it had this to say:

"The language of the statute 'for the execution by or
under the contractor of the whole or any part of any
work undertaken by the principal' is very broad and
*very plain." Burt, supra,* 222 Mich 704. (Emphasis
added.)

In other words, this Court considered this statu-
tory provision to be "plain, certain and unambigu-
ous". As a consequence "a bare reading suffices
and no interpretation is necessary". *Dussia, supra,*
386 Mich 248.

What then is very plain? What is plain is that
the statutory provision makes the principal liable
for benefit payments, *if* the employee of the [unin-
sured] contractor makes a claim for injury "for the
execution by or under the contractor * * * of any
work *undertaken* by the [insured] principal" (em-
phasis added). In other words, if the principal
"undertakes" "any work" to be performed "by or
under the contractor", and an employee of the
contractor in the "execution" thereof is injured,
the principal must pay workers' compensation

benefits—because the principal picked a contractor who was not insured.

The test is: did the plaintiff employee of the uninsured contractor make a claim for benefits for injuries incurred during work executed under the contractor for work "undertaken by the [insured] principal". Careful examination of the language of the whole provision reveals no other limitation.

A line-by-line analysis of that language seems overlabored, but we undertake it, because, as we shall later discuss, the cases in this and other states have extracted extraneously additional limitations not appearing in the statutory language. For example, in *Burt,* this Court responded to the argument of the defendant's insurer, and subsequent opinions have treated those comments as the rule of the case.

For convenience, the pertinent part of the "statutory employer" section is repeated here:

"(1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made *for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him."* (Emphasis added.)

The words "[i]f any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in

this section referred to as the contractor" establish a condition where an employer subject to the act contracts with an employer not subject to the act, but in no way refer to the character of the contract or the "work undertaken".

The words "who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death" establish that the "contractor" is in no way covered by the act. These words also in no way refer to the character of the contract or the "work undertaken".

The words "for which claim is made for the execution by or under the contractor of the whole or any part of any work *undertaken* by the principal" (emphasis added) are the operative words. From this language and the several antecedent words, we must find any limitations on "undertaken".

These words indicate that the claimant:

1) had to be executing work under the contractor, and that

2) the work had to be "undertaken by the principal".

It is from this area that we must derive our interpretation of the word "undertaken".

The words "the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him" refer to the consequences of the fulfillment of the condition set up in the first part of the sentence, and again in no way refer to the character of the contract or the "work undertaken".

The remainder of § 1 throws no light on the character of the "work undertaken":

"[A]nd if compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. A contractor shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract."

Section 2 can be found in footnote 1, but it too is extraneous to our consideration as it refers to the principal's right of indemnification.

In conclusion, for an employee to recover from a principal, there must be: (1) a contract between the principal who is covered by the WDCA and a contractor employer who is not covered; (2) the injury must occur (a) during the execution of work under the contractor which (b) had been "undertaken by the principal". In short, the principal must pay benefits to an employee under the following two conditions: (a) where the injury occurs while the employee is working under a contractor, and (b) where the work has been "undertaken by the principal". These are the sole statutory conditions. There is nothing in the statute that limits or explains "undertaken".

We submit that work "undertaken by the principal" clearly means work which the principal contracts for or undertakes with the contractor and that the language of the statutory provision permits no other conclusion or embroidery.

## C. *Application to Instant Facts*

In *Burt,* the work "undertaken" happened to be the repair of a boiler for the principal, a woodenware manufacturer. In the instant case, the question was whether the repair of a service station customer's car was "work undertaken by the principal", the Gulf Oil Company.

## D. *Consideration of Ancillary Construction Aids*

While in our opinion the statute is plain, clear and unambiguous, not requiring interpretation, the use of interpretive aids in this instance reinforces the plain meaning. Looking for the intent of the Legislature beyond the clear meaning of the legislative language requires us first to consider that the language at issue must be construed liberally to achieve the legislative objective, and second to ascertain what the legislative objective is.

When analyzing the elements of the statute, it is immediately apparent that this provision was adopted to achieve the important goal of protecting a specific class of employees in two interrelated ways: (1) to prevent the evasion of the compensation system by both principals and contractors; and (2) to lift the financial burden from injured employees who work for uninsured contractors.[7]

By specifically making principals liable for compensation of employees of their contractors not covered by the act, the Legislature implicitly and reasonably assumed that it was better for society that principals be discouraged from evading com-

---

[7] See, generally, 1C Larson, Workmen's Compensation Law, § 49.10 *et seq.* See, also, *Green Bay Packaging, Inc v Dep't of Industry, Labor & Human Relations,* 72 Wis 2d 26; 240 NW2d 422 (1976); Note, *Worker's Compensation—Liability of Principal Employer for Injuries to Employees of His Contractors or Subcontractors,* 1977 Wis L Rev 185, 188-192.

pensation liability by dealing with contractors out-
side the workers' compensation system. In effect,
the Legislature has imposed an obligation upon
principals, who elect to have "the whole or any
part of [their] work" performed by contractors, to
ensure that such contractors are covered under
the WDCA or to be liable for the compensation of
the workers of such contractors themselves. While
this provision does not automatically result in a
principal being defined as a statutory employer in
every instance, we must ensure that any test
employed by the WCAB under this provision con-
forms to its intention.

We conclude that the "statutory employer" or
"contracting under" provision sets up the follow-
ing test. When a principal covered by WDCA
contracts with a contractor not covered by WDCA
and an employee of the contractor is injured, the
principal is liable for WDCA benefits (a) if the
injury occurs in the "execution by or under the
contractor of * * * any work", and (b) if the
"work" was "undertaken by the principal". This
test certainly furthers the purposes of the Legisla-
ture (1) to prevent evasion of the compensation
system by both principals and contractors, and (2)
to lift the catastrophic burden of injury from
employees who work for uninsured employers.

## IV. Case Gloss

To us, as to this Court in *Burt,* "[t]he language
of the statute * * * is * * * *very plain"* that the
"statutory employer" provision requires (1) an in-
jury in the execution under the contractor of any
work, and (2) the work to be "undertaken by the
principal". But the cases which have considered
this section of the WDCA, including *Burt* itself,
have added reasoning peculiar to the cases consid-

ered and not directly relevant to the simple reading of this statutory provision. In *Burt, supra,* 222 Mich 704, for example, after concluding that the language of the statute is "very plain", this Court observed:

"The Munising Woodenware Company could not successfully make woodenware with defective boilers. It was just as much a part of its business to keep its boilers in repair as it was to make woodenware. The language of the statute is broad enough to make it liable."

Unless *Burt* was setting up a rule to exclude *ultra vires* acts, it is difficult to conclude that the comment that it was necessary to keep its boilers in repair to manufacture its product had anything to do with whether or not the plaintiff was injured in "the execution * * * under the contractor * * * of any work undertaken by the principal". The principal either undertook the work or it did not. *Cf. Elliott v Smith,* 47 Mich App 236, 242; 209 NW2d 425 (1973), *lv den* 390 Mich 767 (1973). The fact that the work undertaken, the repair of a boiler, was necessary to keep the manufacturing business going is only incidental.

Suppose the principal had not "undertaken" with the company who made the repairs to do the job—that the company by mistake or otherwise just acted without any "undertaking". Would the Munising Woodenware Company be liable for workers' compensation benefits for an injured employee of a company which made the repairs without any "undertaking"? To ask the question is to answer it. The critical requirement is that there be an "undertaking".

The next question is, if there must be an "undertaking", must the "undertaking" also be a part of

the principal's business? There certainly is not a single word in the statutory provision that requires such a conclusion. That is not to say that such a conclusion is not a logical limitation, but it is not one specified in the statute. However, if instead of the "contractor" repairing a company boiler, it repaired, at the company president's request, the boiler in the house of a friend of the president, there might be some reasonable argument that the work was not undertaken by the principal, *i.e.,* the company.

Of course, the *Burt* opinion reveals why this Court indulged in the "part of its business" test. This Court used it to quash an argument by counsel for the insurer that:

" 'Unless the contractor in question has taken over some job which has been undertaken by the principal, or which *normally* or *naturally* would have been done by the principal himself, unless it thus assumes *a part of the very business of the principal,* the statute is not to apply.' " (Emphasis added.) 222 Mich 703-704.

Note that counsel for the insurer in the instant case, as in *Burt,* relies on the words and phrases emphasized which are found nowhere in the statute, but which were introduced into consideration exclusively by the ingenuity of counsel. The long and short of it is that this Court in *Burt* was able to put this exotic and extremely limiting argument by counsel for the insurer to rest with a practical, common sense argument outside the statute that did no violence to that case. Unfortunately this argument later provided to be the germ for less felicitous analysis.

A number of cases decided subsequent to *Burt* specifically employed the "part of the work" analysis. *Rinebold v Bray,* 248 Mich 321, 326; 227 NW

712 (1929), held that the trucking of pipe by a contractor was part of the work undertaken by the principal oil driller. However, compensation was denied because at the time of injury the employee was deviating from the work undertaken. *DeWitt v Grand Rapids Fuel Co,* 346 Mich 209, 216; 77 NW2d 759 (1956), not only employed the *Burt* "part of the work" rule but interpolated the facts of its case into the *Burt* "part of the work" sentences. In *DeWitt,* the contractor repaired a conveyor used in the principal's coal retailing business. Compensation was granted. In *Karvonen v Stankovich,* 357 Mich 96; 97 NW2d 715 (1959), a paper manufacturer principal engaged a contractor to deliver pulpwood. The plaintiff employee of the contractor fell off a load of wood and was injured. The *Stankovich* Court specifically referred to *Burt* and the "part of the business" test:[8]

"That the conduct of the defendant's business involved the procuring of pulpwood suitable for the manufacture of paper is obvious. The question at issue is whether in connection with its operations it engaged [undertook] Stankovich [the contractor] to perform a function constituting a part thereof." 357 Mich 100.

This Court concluded that the paper company, through an involved, three-party contract, had undertaken to have Stankovich perform work, comparing the case of *Heyman v Volkman,* 326 Mich 179; 40 NW2d 110 (1949), see *infra.*

In four other cases, the plaintiffs recovered bene-

---

[8] *Stankovich* not only referred to *Burt,* but analyzed the facts and ruling. Interestingly, *Stankovich* also referred to *Roman, supra.* However, it did so, neither relying on it nor distinguishing it, as follows:

"In *Roman v Delta Broadcasting Company,* 334 Mich 669, the Court, citing prior decisions, indicated the test to be applied in determining the application of part 1, § 10 [of the workers' compensation act]." 357 Mich 101.

fits, and there was no discussion of the "part of the work" rule at all. In *Nowacki v Escanaba Mfg Co,* 229 Mich 675; 203 NW 64 (1925), the contractor worked in the woods, and the principal manufactured wood products. In *Aukstales v Klotz,* 280 Mich 355; 273 NW 597 (1937), the contractor snowplowed a logging road; the nature of the principal's business was unclear. In *Harris v Fry & Kain,* 306 Mich 1; 9 NW2d 902 (1943), the contractor was a construction contractor, and the principal was a bank which had undertaken the laying of a drain across some of its property. In *Heyman v Volkman, supra,* the contractor was cutting timber and delivering it to the principal sawmill operator.

The conclusion to be drawn from all these cases is that even if there is to be an ancillary "part of the work" test in addition to whether the work was "undertaken", the rule does not loom significant in all cases, and when it is used, it is construed broadly to cover almost anything but an *ultra vires* act. In reaching this conclusion, it must be noted that there is one aberrant case, *Roman v Delta Broadcasting Co,* 334 Mich 669; 55 NW2d 147 (1952).

The first thing to note about *Roman* is that there was no "admission or showing in the record, that [the contractor] was, at the time in question, not subject to the workmen's compensation act. This is a prerequisite". In other words, strictly speaking the case is dictum as far as setting up a test for "statutory employers" is concerned. However, since defendant and the WCAB relied heavily on the purported test in *Roman,* we consider it. The pertinent facts in *Roman* were that the defendant principal broadcasting company contracted with an uninsured independent contractor for whom the injured employee worked to take down

its radio tower. The *Roman* Court denied the plaintiff recovery when the plaintiff's decedent was killed in executing the work.

The *Roman* Court reasoned:

"[D]efendant's liability as principal under the mentioned act would depend on its having contracted with John, the contractor, 'for the execution by or under the contractor of the whole or any part of *any work undertaken by the principal.*' Defendant was engaged in the broadcasting business. It was not in the business of and did not undertake the work of razing a radio tower." 334 Mich 671.

*Roman* was wrongly decided for two reasons. First, there is no question but that the work was undertaken by the principal:

"[T]he commission made a finding of fact, supported by some competent evidence, that John [the contractor] entered into a contract with defendant to take down its radio tower". *Id.,* 670.

Second, even under the "part of its business" test, it is specious reasoning to conclude that a broadcasting company's razing of its tower is not part of its business where unquestionably the raising of its tower would be part of its business (see *Burt* and *DeWitt),* unless this Court wants to pry into the business judgment of the broadcasting company and second-guess whether it should or should not have taken down the tower or for that matter have put it up in the first place. It is inconceivable that the Legislature intended to enact a statute requiring the courts or administrative agencies to make such judgments.

*Woody v American Tank Co,* 49 Mich App 217, 230; 211 NW2d 666 (1973), *lv den* 391 Mich 766

(1974), in an opinion written by former Justice O'Hara, held that where a city contracted with the American Tank Company to disassemble an old water tower prior to selling the land on which the tower stood, the plaintiff employee of American Tank Company who was injured in the execution of the work was entitled to compensation from the principal city. The opinion recognized the "part of its business" test and the authority of *Burt* as contrasted with *Roman*.[9]

To conclude, even if we accept the case gloss of "part of its work" upon the statutory test of "undertaken by the principal", if the principal in the instant case did indeed undertake with Lang, the contractor, to run a full service gasoline station including repair work, then the plaintiff is entitled to recover.

## V. WCAB Reliance on *Roman*

The dissent in the original WCAB opinion in this case read in pertinent part as follows:

"In *Roman v Delta Broadcasting Co*, 334 Mich 669 (1952), the Court stated the following test at page 671:

" 'That distinction between (1) work which is part of the business of the principal and (2) work, contracted to be done for it, which is not part of its business and therefore not work undertaken by it, was clearly recognized in *Burt v Munising Woodenware Co*, 222 Mich 699, and *Rinebold v Bray*, 248 Mich 321.'

"Therefore, based upon the foregoing, the proper

---

[9] Former Supreme Court Justice O'Hara, sitting on the Court of Appeals by assignment, noted the following:

"See the litany of cases beginning with *Burt v Munising Woodenware Co*, 222 Mich 699; 193 NW 895 (1923), through and including cases on into 1959 (except *Roman v Delta Broadcasting Co*, decided in 1952, which we do not attempt to explain, distinguish or reconcile except to say that the weight of Supreme Court precedent is all *contra*)." 49 Mich App 230.

inquiry is whether the retail sale of gasoline and oil is part of the business of Gulf Oil. The evidence does not establish that Gulf engaged in retail sales of products. Its plan of organization was sales or consignment of products to distributors like Bole with subsequent sale by distributors to retail dealers like Lang. The testimony established that Lang was solely in charge of how, when, for what price, and under what conditions Lang operated and sold Gulf products.

"The question for consideration then is the kind of work which Gulf would normally do through its own employees. 1A Larson, Workmen's Compensation Law, § 49.12. The answer is that Gulf did not retail gasoline or petroleum products through its own employees, and it did not do so in this instance." Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 353a.

It should be noted that the controlling WCAB opinion agreed with the dissent on this point.

It is clear that under the rule in *Burt, DeWitt,* and *Woody* the WCAB applied the wrong test. The WCAB quotes the test as "whether the retail sale of gasoline and oil is part of the business of Gulf Oil" and concludes that it is not. The test, of course, is whether Gulf undertook with Lang to do transmission repair work.

Moreover, the WCAB then applied the narrow rule it borrowed from Larson, *supra,* that is, is it "the kind of work which Gulf would normally do through its own employees". However, this is a completely erroneous application of the test in *Burt, DeWitt,* and *Woody.* This Court was not concerned with whether the Munising Woodenware Company employees would "normally" repair boilers, nor whether the Grand Rapids Fuel Company would "normally" make conveyor repairs, nor whether the employees of Delta Broadcasting Company would "normally" disassemble a broadcast tower, nor whether the bank's employees in

*Harris v Fry & Kain, supra,* would "normally" lay drainage tile.

In short, the WCAB's reliance on and application of *Roman* does violence to the controlling precedent of *Burt, DeWitt,* and *Woody.*[10] As for reliance on the Virginia cases, the Virginia statute is different from the Michigan WDCA, and reliance on it is unwarranted.[11]

## VI. APPLICATION OF MCL 418.171

The ultimate question in this case is whether Gulf Oil Company or Bole Oil Company was a statutory employer of the plaintiff under MCL 418.171; MSA 17.237(171).

"If [the principal, an employer covered under WDCA,] contracts with [a contractor, a non-covered employer, and an employee of the contractor makes a claim for injury] for the execution by or under the contractor * * * of any work *undertaken by the principal,* the principal shall be liable [for WDCA benefits]." (Emphasis added.)

From the statute, we derive the following indi-

---

[10] See, generally, Downing, *Workmen's Compensation, 1974 Ann Survey of Mich Law,* 21 Wayne L Rev 735, 741-743 (1975).

[11] *E.g., Sun Oil Co v Lawrence,* 213 Va 596; 194 SE2d 687 (1973); *Shell Oil Co v Leftwich,* 212 Va 715; 187 SE2d 162 (1972).
Virginia Code § 65.1-29 under which these cases were decided reads as follows:

"When any person (in this section and §§ 65.1-31 and 65.1-32 referred to as 'owner') undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (in this section and §§ 65.1-31 to 65.1-34 referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him." (Emphasis added.)

vidual factors required to make the legal determination that Gulf-Bole may be statutory employers:

1. Gulf-Bole was an employer insured under the WDCA.

2. Lang was an employer uninsured under the WDCA.

3. Gulf-Bole contracted with Lang.

4. Plaintiff was employed under Lang.

5. Plaintiff was injured while employed under Lang in the execution of work.

6. The work was "work undertaken by the principal" Gulf-Bole.

Although the consideration of these factors involves mixed questions of law and fact, which is a judicially appropriate function, it would be possible to remand the matter to the WCAB to act under correct legal principles herein outlined. However, since we have already once remanded the matter to the WCAB and since the matter is more than ten years old, judicial economy suggests that it would be better to render a decision to resolve this long-running litigation. We therefore proceed to consideration of these factors.

A. *Gulf Oil Company*

1. It is uncontested that Gulf Oil Company was an employer insured under the WDCA.

2. It is uncontested that Lang was an employer not insured under the WDCA.

3. Gulf contracted with Lang. Records & Briefs of Supreme Court No 3, April, 1978, Appendix, pp 80a-85a (testimony of Bole, a Gulf distributor). There was a lease between Gulf and Lang. Records & Briefs of Supreme Court, No 3, April, 1978, Appendix, p 520a.

4. Plaintiff was employed by Lang. The WCAB

made a special finding of this at this Court's request.

5. It is not disputed that plaintiff was injured during a test drive of a car he repaired while working under Lang. The question is whether the repair work was "work undertaken by the principal".

6. The work was "work undertaken by the principal" Gulf.

To determine whether the repair of customer cars "by or under" the "contractor" service station was "work undertaken by the principal", we look first to whatever contract or contracts were entered into between Gulf and Lang. The actual lease between Gulf and Lang was not produced by Gulf at the hearing, but a copy of the standard lease form which was the basis of the Gulf-Lang lease was introduced. Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 520a. Under the lease, among other undertakings required of a lessee, Lang, in order to preserve the intrinsic value of the service station, was to "furnish such services and accommodations to retail gasoline customers as are customarily provided by gasoline service stations, including but not limited to" certain enumerated services such as hours of operation, condition of the premises, maintenance of restrooms, etc. The lease did not specifically include car repairs.

In order to determine whether car repairs were "customarily provided by gasoline service stations", we must look to extrinsic evidence. That the undertaking between Gulf and Lang contemplated Lang's providing repair service is clearly shown by the credit card agreement. Records & Briefs, Supreme Court No 3, April, 1978, Appendix, p 416a. This document begins: "[w]hereas Gulf

Oil Corporation * * * has made available a credit card program to encourage greater sales of products, merchandise, and services at stations displaying the Gulf brand". Thereafter the duties of both parties regarding the credit cards is described. What is of direct interest to our consideration is the testimony of Roger Eberly, a Gulf sales representative. Mr. Eberly first identified the credit card agreement as follows:

"*Q.* According to this agreement the purpose of the credit card program is to encourage greater sales of merchandise, products, and service displaying the Gulf brand, is that your understanding of the purpose?

"*A.* Yes.

"*Q.* It is not used exclusively to pay for Gulf products, it can be used to pay for oil changing, grease job, *pay for mechanical work,* can it not?

"*A.* Yes.

"*Q.* Can you use it to pay for tires, batteries, products that were not produced, manufactured, or sold by you?

"*A.* Yes.

"*Q.* The idea being to promote more use of the Gulf stations you would be selling more Gulf oil products, isn't that correct?

"*A.* Yes." (Emphasis added.) Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 114a.

This testimony of the Gulf representative clearly and explicitly indicates that Gulf's undertaking with Lang included "mechanical work" to be performed by or under Lang.

That it was contemplated that service stations customarily provide repair services is indicated by the fact that Gulf supplied them with manuals on how to do mechanical work profitably. This is shown by the following testimony of Lyle Armel, a Gulf sales representative:

"*Q.* However, you do, your stations, enough of your stations do mechanical work, etc., that you do supply them with data books showing how they can profitably run an operation?

"*A.* As to sale of our products, yes.

"*Q.* As long as a sale of your product is involved?

"*A.* Correct." Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 158a.

Furthermore, Mr. Armel testified that Gulf service stations were permitted to have tow trucks, suggesting that Gulf service stations could provide repair services:

"*Q.* Are your stations permitted to have emergency service equipment, tow trucks, available?

"*A.* Yes.

"*Q.* Are those charges permitted to go onto a Gulf credit card?

"*A.* Up to a limit, yes." Records & Briefs of Supreme Court No 3, April, 1978, Appendix, pp 195a-196a.

Additional evidence that service stations customarily provided repair services is found in the fact that Gulf mediated complaints between service stations and customers dissatisfied with mechanical repairs. Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 118a (testimony of Roger Eberly).

The sum of this evidence is that Gulf had undertaken with Lang to "furnish such services * * * as are customarily provided by gasoline service stations", that under Gulf's credit card program Lang's customers would charge repair services, that Gulf provided manuals on how to do mechanical work profitably, that Gulf service stations were permitted to provide tow truck service, and that Gulf mediated disputes between Gulf service stations and mechanical repair customers. Individually and especially in combination these pieces of

evidence indicate that Gulf contemplated that "customarily provided * * * service station services" included mechanical repairs and that the undertaking between Gulf and Lang specifically included such mechanical repair services.

A final observation is that Mr. Bole, who brought Gulf and Lang together and who was a Gulf distributor, and also Mr. Eberly, Gulf's representative (Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 127a) recognized that the plaintiff did mechanical work at Lang's service station.

Because of the evidence discussed, we determine that car repair work was "work undertaken by the principal". Therefore, because of this determination and the determinations with respect to the other factors, we hold that Gulf Oil Company was a statutory employer of the plaintiff under MCL 418.171; MSA 17.237(171) and is liable for compensation benefits. Application of the *Burt, DeWitt, Woody* "part of its business" test confirms our statutory interpretation. Applying the *Burt* test that "[i]t was just as much a part of its business to keep its boilers in repair as it was to make woodenware", it was just as much a part of Gulf's business to facilitate the sales of gasoline through full service stations as it was to procure and refine the oil. Gulf's leasing of pumps, permitting use of its logotype, and providing for purchases by credit card makes that abundantly clear.

### B. *Bole Oil Company*

In deciding Bole's status under the statutory employer provision, we apply the same factors that were used in deciding Gulf's status. Our analysis indicates that:

1. It is uncontested that Bole Oil Company was an insured employer under the WDCA.

2. It was uncontested that Lang was an employer not insured under the WDCA.

3. Bole testified that his company had no contract with Lang. Records & Briefs of Supreme Court No 3, April, 1978, Appendix, p 97a.

4. Plaintiff was employed by Lang. The WCAB made a special finding of this at this Court's request.

5. It is uncontested that plaintiff was injured during a test drive of a car he repaired, while working under Lang.

6. The last factor is whether the repair work done by plaintiff was "work undertaken by" Bole. Plaintiff does not adduce any evidence that there was an undertaking by Bole that repair work be executed by or under Lang, nor do the WCAB finding or our own research of the record indicate that there is any such evidence.

On the basis of our analysis of the above factors, we conclude that the plaintiff did not prove that Bole was his statutory employer.

## CONCLUSION

We hold that the operative language "work undertaken by the principal" of MCL 418.171; MSA 17.237(171) simply means work which a principal contracts for or undertakes with a contractor to be performed and that the language of this provision does not permit any other conclusion. Thus, the WCAB erred legally in applying the aberrant *Roman* decision rather than the interpretation of this provision established in *Burt, DeWitt,* and *Woody.* Likewise, we reject the "naturally or normally" test referred to in *Roman,* discussed in Larson, *supra,* and used in several

Virginia cases because of the language difference in the Michigan WDCA.

Moreover, even if we accept the case gloss of "part of its work" upon the statutory language "work undertaken by the principal", we hold that statutory employer status is still premised on a principal who is covered under the WDCA, undertaking with a contractor who is not.

Finally, because this case dates back to 1970, we have considered whether Gulf, Bole, or both are statutory employers. Our careful review of the evidence in the record leads us to conclude that Gulf is a statutory employer of the plaintiff, but that Bole is not such an employer.

The decision of the WCAB is reversed. The matter is remanded for further proceedings consistent with our opinion.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.

LEVIN, J. I concur for the reasons stated in part VI of Justice WILLIAMS' opinion.