GATES L. ROSENTHAL V. ALBERT DICKERMAN, CIRCUIT
JUDGE OF MUSKEGON COUNTY.

*Attachment—Books of account—Abuse of process—Mandamus.*

1. The process of courts of justice can never be used for inquisitorial purposes or for oppression, and such use be sustained.

2. While books of account may be evidences of debt, their seizure on a writ of attachment is not the attaching or seizure of the debt itself, nor are they so intimately connected with the demands charged therein as to make the seizure of the books equivalent to the seizure of the demands; and there is no means by which such demands can be transferred by a direct levy and sale.

3. Where creditors sue out a writ of attachment before the maturity of the debt upon an affidavit which they know is insufficient to authorize the issuance of the writ, and the books of account of the debtors, which are in the possession of a mortgagee, are seized, and, after the attorneys for the creditors have taken copies therefrom, the books are returned by the officer to the custody of the mortgagee, and the attachment suit is discontinued, and a second writ of attachment is issued, the affidavit for which is based upon the information gained through said copies and the examination of said books, which was the real object of the seizure, *mandamus* will lie to compel the circuit judge to make an order, on the motion of the mortgagee, who has been summoned as garnishee in the attachment suit, requiring the attorneys to deliver up said copies, and refrain from disclosing their contents, or the contents of the books from which they were made, or from using the same for the purposes of the attachment suit, or for any other purpose.

*Mandamus.*     Argued     December     12,     1893.     Granted
December 22, 1893.

Relator applied for *mandamus* to compel respondent to
enter an order restraining the use of certain evidence,
claimed to have been secured through an abuse of process.
The facts are stated in the opinion.

*Bunker & Carpenter,* for relator.
*Brown & Lovelace,* for respondent.

LONG, J.  Relator is garnishee defendant in a cause pend-
ing in the Muskegon circuit court, in which Samuel Rosen-
wald, Julius Rosenwald, and Julius Weil are plaintiffs, and Sol
Rosenthal and Sam Rosenthal are the principal defendants.
The principal cause was commenced by writ of attachment
issued out of the circuit court, and the garnishee proceed-
ings are based thereon.  After the writ of garnishment was
served, Bunker & Carpenter, as attorneys for the garnishee
defendant, entered a motion in the cause for an order
requiring Norris J. Brown and George S. Lovelace, attorneys
for the plaintiffs in the original suit, to deliver up to
defendant's counsel all copies taken by them, or either of
them, of the books of account, trial balances, and private
papers of the firm of Rosenthal Bros., composed of Sol
and Sam Rosenthal, the principal defendants, and severally
to make oath that, at the time of such delivery, such
copies embraced all that said Brown & Lovelace, or either
of them, believed to exist, and that said Brown & Lovelace
be severally restrained from using in any way the books
and papers attached in the principal proceeding, or from
disclosing their contents, or the contents of copies taken
from them, for the purpose of this case, or for any other
purpose whatever, for the reasons:

1. Because the books of account, trial balances, and
   98 MICH.—14.

private papers are not attachable, under the laws of this State.

2. Because said Brown & Lovelace, who examined the attached books, trial balances, and papers, and took copies thereof, were, and each of them was, guilty of an abuse of their powers and duties as officers of the court, and of the process of the court.

3. Because said Brown & Lovelace used the process of the court for an unlawful purpose.

4. Because the sheriff of the county exceeded his authority, and was guilty of an abuse of his powers and duties, in permitting said Brown & Lovelace to make an examination of the books and papers so attached, and to take copies therefrom.

5. Because said examination was made, and said copies were taken, while said books, trial balances, and papers were in the possession of the sheriff of said county, who then held them under an unauthorized seizure by virtue of a writ of attachment then in his hands.

This motion was based upon the testimony of Mr. Lovelace and of the sheriff, given in the case of *George B. Cluett et al. v. Gates L. Rosenthal, Garnishee of Sol and Sam Rosenthal,* an abstract of which was filed in the cause, and upon an exhibit introduced in evidence in said last-named case, the same being a circular letter written by said Brown & Lovelace to the creditors of the firm of Rosenthal Bros., and upon certain affidavits filed, and the files and records in this cause.

The motion was heard in the court below, and denied. *Mandamus* is asked to compel the court to set aside the order denying the motion, and to grant the order asked.

It appears that, prior to the issuing of any writ of attachment against Rosenthal Bros., they had executed a chattel mortgage to Gates L. Rosenthal, the garnishee defendant here. Proceedings were taken to foreclose that mortgage; and the stock of goods and other property which it covered, amounting to about $30,000, were bid in by Gates L. Rosenthal, who claimed, at the time attachment proceedings were commenced, to be in possession. Brown & Love-

lace, having a claim in their hands not yet due, sued out a writ of attachment on said claim, placing it in the hands of the sheriff of the county, who entered the store where the properties were situate, and of which Gates L. Rosenthal claimed to be in possession, and seized and took into his possession certain moneys, books of account, paid and canceled checks, trial balances, and other books and papers. He took these books to the county jail, and there permitted Brown & Lovelace, who were plaintiffs' attorneys in the writ, to examine them, and to take copies from them. After this was done, the property so attached was returned to the store, and the attachment proceedings discontinued. It is admitted by Brown & Lovelace that they knew that this writ of attachment could not be sustained if a motion was made for its dissolution, as the action was brought upon a debt not yet due, and no sufficient showing had been made in the affidavit to sustain such a writ. Brown & Lovelace, having obtained certain facts from the examination of the books and papers of Rosenthal Bros., sued out a second writ of attachment in the circuit court for Muskegon county in favor of George B. Cluett and others against Rosenthal Bros., and caused a writ of garnishment to issue against Gates L. Rosenthal. That cause was heard in the circuit court, and is now pending in this Court upon appeal. In that case, in order to establish the plaintiffs' claim that Rosenthal Bros. had made a fraudulent mortgage, and to show that Gates L. Rosenthal had properties and effects in his hands belonging to the principal defendants, Mr. Lovelace was called as a witness, and was permitted to testify to certain facts which he found by an examination of these books and papers. Upon his cross-examination in that case, it appears that he took copies of such books and papers, including trial balances. It is for the surrender of such papers and copies so taken that this application was made to the court below.

In the Cluett case, Mr. Lovelace testified fully as to what examination he made, and that after such examination he was in a position to make an affidavit under the law for the issuing of a writ of attachment.     From Mr. Lovelace's testimony, it is quite apparent that Brown & Lovelace knew the first writ of attachment could not be sustained under the affidavit upon which it was based, and that the first writ was used for the purpose of getting evidence upon which to ground subsequent writs.     No return was ever made to this first writ, but, on the contrary, the suit was discontinued, and the writ withheld, as soon as the evidence was obtained.     It is true that Brown & Lovelace deny that the writ was issued for the purpose of getting this information, but, whether it was issued for that purpose or not, it was so used.

To the order to show cause, the circuit judge makes a return in which he says that upon the trial of the Cluett case an objection was made to the introduction in evidence of the contents of the books of Rosenthal Bros., but that such evidence was allowed, and that the jury in that cause found adversely to the relator; that in the present case the writ of attachment was sued out by Thomas C. Clark, as attorney for plaintiffs, and that Brown & Lovelace were thereafter substituted in his stead.     It is further returned that it appeared, upon the hearing of the motion, that the books and papers claimed to have been inspected were mortgaged by Sol and Sam Rosenthal to relator, as trustee for himself and other creditors, before said attachment, and which mortgage, if valid, was in force at the time said property was attached, and that relator had no rights or interests in the books and papers, except such as he obtained by said mortgage, and that such books and papers were the property of Sol and Sam Rosenthal, and constituted a part of a large amount of property attached. The return further sets forth that, upon the hearing of

the motion, relator made no showing that plaintiffs would use or attempt to use the evidence as to the contents of these books and papers upon the trial of said cause wherein relator was interested, and that it did not appear that relator was entitled to the copies of the books and papers taken by Brown & Lovelace. From all the evidence the court determined that the writ of attachment was issued in good faith, and executed in good faith, and that there was no abuse of the process of the court, and that Brown & Lovelace ought not to be compelled to surrender such copies, or to make the oath asked. The return nowhere denies that the mortgage had been foreclosed, and the property bid in by Gates L. Rosenthal. This fact appears from the testimony of Mr. Lovelace, and is nowhere contradicted. But it is assumed, not only that the mortgage was void, but that the sale was also void, and therefore the relator had no right to possession, such assumption being based upon the facts obtained by the use of the first writ of attachment.

We think there is conclusive evidence that the facts obtained by Brown & Lovelace are a part of the case, and the foundation of the case in hand. The only question involved is, has there been an abuse of the process of the court? Can parties be permitted to take a writ of attachment, knowing it to be invalid and issued upon an affidavit confessedly defective, and attach property under it which is not subject to levy, and gain information or evidence upon which to base a proper writ, and sustain that writ by such means? It is said by counsel for plaintiffs in the writ, who appear here to defend the action, that it is an effort to have this evidence adjudged incompetent, and for this reason restrain its use, and thus anticipate a ruling of the court below thereon in advance of a trial, and without any showing that it will be offered. This is not the point in issue here, and does not reach the question involved.

The claim is that the process of the court has been abused, in that a writ of attachment utterly void, and known to be void by the attorneys causing its issue, and who are officers of the court, has been used to obtain evidence upon which to found subsequent proceedings, and for inquisitorial purposes; that, this being so, the evidence thus obtained is not competent for any purpose, and the parties having possession of any copies containing such evidence are bound to surrender them, and make proof that they have surrendered the whole thereof, so that they may not be used by them, or any one else; and that they have no right to the possession of such evidence.

In this we think counsel for relator are correct. These books of account and trial balances are not property of such tangible character that they can be made subject to such levies. They may be evidences of debt, but their seizure is not the attaching or seizure of the debt itself. They are not so intimately connected with the demands charged therein that the seizure of the books is equivalent to the seizure of the demands, and there is no means by which these demands can be transferred by a direct levy and sale. Freem. Ex'ns, § 112; *Com. v. Abell*, 6 J. J. Marsh. 476; *Thomas v. Thomas*, 2 A. K. Marsh. 430; *Wier v. Davis*, 4 Ala. 442; *Carlos v. Ansley*, 8 Id. 900; *Horton v. Smith*, Id. 73. In *Dart v. Woodhouse*, 40 Mich. 399, it was held that a set of manuscript abstract books are not subject to levy and sale on execution. In *Perry v. City of Big Rapids*, 67 Mich. 146, it was held that such abstract books have no intrinsic value, and are not taxable. In Drake on Attachment (6th ed. § 249) it is said:

" Where property is of such nature that an attachment of it would produce a sacrifice and great injury to the defendant, without benefiting the plaintiff, it is not attachable. Such is the rule in relation to the defendant's private papers, or his books in which his accounts are kept. Much less would an attachment be considered to create a

lien on the accounts contained in the books;" citing *Brad-ford v. Gillespie,* 8 Dana, 67.

In *Dart v. Woodhouse, supra,* Mr. Justice CAMPBELL said:

"It would be very absurd to hold that books could be seized and sold on execution which after sale the purchaser could not use."

It is conceded that these books and papers seized were not of any value, in themselves. Mr. Lovelace says they were not of much value, except as evidence. In *People v. Board of Auditors,* 5 Mich. 223, it was held that a warrant drawn by the board of auditors is not subject to levy on execution. In *Bradford v. Gillespie, supra,* it was held that a return on an attachment of " Levied upon an account-book, the property of the defendant," will not authorize a judgment.

As before stated, the real gist of the complaint here is not that property was levied upon which was not subject to levy, but the use which was made of the process of the court. It is seen that the attachment was void, and was levied upon property not subject to levy, yet the parties responsible for it—officers of the court—are permitted to use the evidence thus obtained. If the writ had been valid, and the property taken under it had been subject to levy, it was the duty of the sheriff to "safely keep the same to satisfy any judgment that may be recovered by the plaintiff in such attachment." How. Stat. § 7990. Instead of doing this, the writ was used as a search warrant for evidence, and, having obtained the evidence sought, the books were returned. Had the defendants been charged with a crime, it would have been necessary, in order to obtain a writ which would accomplish what was accomplished here, to show to the satisfaction of the court that probable cause existed, which showing must have been supported by oath or affirmation, the place particularly described, and a de-

scription of the property to be searched for or seized have been set forth with exact particularity.

"Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings, or for the maintenance of any mere private right; but their use was confined to cases of public prosecutions instituted and pursued for the suppression of crime, or the detection and punishment of criminals." *Robinson v. Richardson*, 13 Gray, 456.

Article 6, § 26, of our own State Constitution, provides:

"The person, houses, papers, and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause supported by oath or affirmation."

Here the parties were charged with no crime, yet upon a void process—one which the parties causing its issue confessedly knew to be void—a levy was made upon property not subject to seizure, and copies made thereof; and these copies are now held by these officers, and have actually been permitted to be used in one case as evidence, and in the present case are the foundation upon which the writ was issued.

But one case has been called to our attention where such a proceeding has before been attempted. In *Hergman v. Dettlebach*, 11 How. Pr. 46, it appears that a deputy-sheriff, under an attachment, levied upon certain books, papers, letters, and correspondence of a partnership. It was held that under the New York statute certain books and papers of a partnership were subject to levy, but letters and correspondence were not among those authorized to be taken. It was said:

"As the whole proceeding on the part of the deputy in examining the books and papers is grossly irregular, an order must be made that the regular books of account of

the firm, and its notes, policies of insurance, and all other securities and vouchers, be safely kept by the deputy-sheriff under lock and key, without power on the part of such deputy or any other person, except the defendants, to look into or examine the same, except under the special order of the court, to be made on notice to the defendants."

It was further said:

"All other papers, of every name and description, taken by such deputy, and all translations or copies of such translations, if any, of the books, letters, vouchers, or papers, must be delivered up forthwith to the defendants' attorneys; and, to insure the same, such delivery must be made under an affidavit to be made by such deputy, by the plaintiffs, and their attorneys and counsel, that, at the time of such delivery, such copies embrace every translation or copy of such translation or copy of such original which the deponent knows of, or believes, or has any reason to believe, exists; and the plaintiffs, and their attorneys, agents, and counselors, are hereby restrained from in any way using such original books and papers, or using or disclosing the contents of such copies, in any manner whatsoever, except by special order of the court. This order must be complied with forthwith."

The process of courts of justice can never be used for inquisitorial purposes or for oppression, and such use be sustained. If such a practice should be countenanced, no man's private papers would be free from search or seizure.

The writ must be granted as prayed.

The other Justices concurred.