MORIN v DEPARTMENT OF SOCIAL SERVICES

Docket Nos. 65026, 65027. Submitted December 7, 1983, at Lansing.—
Decided June 4, 1984.

Plaintiff, Kathy L. Morin, was certified by the Department of
Social Services to provide in-home child care for DSS clients at
the state's expense. She was hired by June Radomski, who was
enrolled in a work training program and thus qualified for
child care assistance. Plaintiff was paid by the DSS by way of a
check made payable to both plaintiff and Radomski. While
caring for Radomski's children, plaintiff was injured. A claim
for workers' compensation benefits was filed against DSS. The
hearing referee found that plaintiff was an employee of DSS
and awarded benefits for permanent and total loss of use of her
left leg and arm. DSS, the Michigan State Accident Fund, and
the Second Injury Fund appealed to the Workers' Compensa-
tion Appeal Board and began paying 70% of the weekly bene-
fits pursuant to statute. While the appeal was pending the
payments to plaintiff were reduced upon advice of the chairper-
son of the WCAB that it would be appropriate to do so. Plaintiff
moved to dismiss the appeal for failure to comply with the 70%
rule. The motion was denied. Subsequently the WCAB ruled
that plaintiff was an independent contractor hired by Radomski
and thus not qualified for benefits. The WCAB further held
that DSS was not liable for payment of benefits as a statutory
principal. Plaintiff appealed, by leave granted, both the order
denying her motion to dismiss and the final order of the
WCAB, and the appeals were consolidated. *Held:*

1. The WCAB is not required to dismiss the defendants'
appeal for failure to comply fully with the 70% rule where
there is substantial compliance and good cause is shown for
partial noncompliance. Dismissal in such a case is discretion-
ary. Here, although the board chairperson exceeded his author-
ity in informally consenting to the reduction in benefits, defen-

References for Points in Headnotes

[1] 82 Am Jur 2d, Workmen's Compensation § 613.
[2] 82 Am Jur 2d, Workmen's Compensation § 631.
[3] 81 Am Jur 2d, Workmen's Compensation §§ 3, 168 *et seq.*
[4] 81 Am Jur 2d, Workmen's Compensation §§ 152, 156.

dants did substantially comply with the rule. The WCAB did not abuse its discretion in denying the motion to dismiss.

2. On the facts of this case, the WCAB did not err in finding that plaintiff was not an employee of DSS. The relationship here was more akin to that of employer-contractor than to employer-employee.

3. The WCAB erred in finding that DSS could not be held liable as a statutory principal. The pivotal issue, on the facts herein, is whether there was a contract between DSS and Radomski regarding plaintiff's employment. The agreement to pay Radomski's child care expenses in return for her participation in a work training program constitutes such a contract. DSS is thus liable for payment of benefits as a statutory principal pursuant to MCL 418.171.

Reversed and remanded for a determination of the amount of compensation to be paid.

CYNAR, J., concurred in the result but would hold that the plaintiff, under the economic realities test, was an employee of the DSS for workers' compensation purposes and that the WCAB erred in finding otherwise.

### OPINION OF THE COURT

1. WORKERS' COMPENSATION — DISMISSAL OF APPEAL — COMPLIANCE WITH STATUTE.

The Workers' Compensation Appeal Board is not required to dismiss an appeal for noncompliance with the statute which requires payment of 70% of benefits while a claim is pending on appeal where there is substantial compliance with the statute and good cause can be shown for the partial noncompliance (MCL 418.862; MSA 17.237[862]).

2. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT.

Findings of fact in workers' compensation proceedings are conclusive in the absence of fraud; the Court of Appeals will review the record only to determine whether there is any evidence to support the decision of the Workers' Compensation Appeal Board or whether the board's decision is based on erroneous legal reasoning.

3. WORKERS' COMPENSATION — CONTRACTORS — STATUTORY PRINCIPAL.

A party, as a statutory principal, may be liable for payment of workers' compensation benefits to an injured worker employed by a contractor if: (1) the principal is subject to the provisions of the Worker's Disability Compensation Act, (2) the contractor is not subject to the act or has not secured workers' compensa-

tion insurance coverage, (3) there is a contract between the principal and the contractor concerning the worker's services, and (4) the worker's injuries occur while performing work under that contract (MCL 418.171; MSA 17.237[171]).

CONCURRENCE BY CYNAR, J.

4. WORKERS' COMPENSATION — EMPLOYER-EMPLOYEE RELATIONSHIP — ECONOMIC REALITIES TEST.

   The existence of an emloyer-employee relationship for workers' compensation purposes is determined by the economic realities of the situation; the so-called economic realities test focuses upon four factors: (1) control of the worker's duties, (2) payment of wages, (3) the right to hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.

*Davidson, Breen & Doud, P.C.* (by *Michael J. Harrelson),* for plaintiff.

*O'Neill, Ackerman, Wallace, Doyle & Jones* (by *Charles L. Jones* and *Thomas E. Ackerman),* for defendants Department of Social Services and Michigan State Accident Fund.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for defendant Second Injury Fund.

Before: M. J. KELLY, P.J., and CYNAR and J. C. KINGSLEY,* JJ.

M. J. KELLY, P.J. Plaintiff appeals by leave granted from a decision of the Workers' Compensation Appeal Board denying her compensation for injuries sustained in the course of her employment as a day-care aide. We reverse.

In 1977, plaintiff was certified by the Department of Social Services as a day-care aide, allow-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

ing her to provide in-home care for the children of DSS clients at the state's expense. Plaintiff was eventually hired by June Radomski, an ADC recipient with two school-aged children. Radomski had enrolled in a work training program which qualified her for child care assistance from DSS, on the condition that the caretaker was certified or that the facility was licensed. Radomski was provided with a list of names of certified aides which included plaintiff. DSS paid plaintiff for her services by way of a check made payable to both plaintiff and Radomski.

Plaintiff, a 16-year-old high-school student, began taking care of Radomski's children after school each weekday from 3:30 p.m. until approximately 5:30 p.m. On June 3, 1977, plaintiff was to begin full-time employment through the summer months. On that day, however, as plaintiff was transporting the children to Radomski's place of employment, she was involved in an automobile accident and sustained serious injuries.

Plaintiff's father filed a claim with the Bureau of Workers' Disability Compensation against DSS on plaintiff's behalf, alleging that plaintiff had lost the industrial use of her left arm, leg, and hip and had sustained mental injuries as a result of the accident. Following a hearing, the hearing referee found that plaintiff was an employee of DSS and that she had sustained permanent and total loss of use of her left leg and arm. Plaintiff was awarded maximum weekly benefits of $127 under MCL 418.359; MSA 17.237(359). Defendants appealed the decision to the WCAB and commenced paying 70% of the weekly benefits as required under MCL 418.862; MSA 17.237(862). The WCAB subsequently reversed and held that compensation was not authorized under the Worker's Disability Com-

pensation Act of 1969, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* because plaintiff was an independent contractor hired by Radomski and not an employee of DSS. MCL 418.161; MSA 17.237(161). The board further refused to hold DSS liable as a statutory principal under MCL 418.171; MSA 17.237(171).

I

The hearing referee issued his award on October 30, 1980. From that date until January or February of 1982, defendants paid 70% of plaintiff's compensation benefits pending appeal, as is required under MCL 418.862; MSA 17.237(862). Following the decision of the Michigan Supreme Court in *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 (1981), *reh granted* but *appeal dismissed* 414 Mich 1102 (1982), defendants contacted the chairperson of the WCAB and inquired about reducing plaintiff's monthly payments according to the rule announced in that case. Despite the apparent inapplicability of *Gusler* to this case, defendants' request was favorably received and payments to plaintiff were reduced after the WCAB chairperson advised the State Accident Fund that it would be appropriate to do so.

Plaintiff subsequently moved to dismiss defendant's appeal for failure to comply with the 70% rule. The WCAB denied plaintiff's motion, claiming that an order of dismissal under MCL 418.862; MSA 17.237(862) was discretionary with the board and that:

"Because of the complexity and serious issues raised in this case, as well as the ambiguous nature of the administrative law judge's decision regarding Section

359, and the controversies created by *Gusler,* it is not appropriate to dismiss defendants' appeals. This situation was also contributed to by the board when it, perhaps incorrectly, advised the State Accident Fund that it would be permissible to reduce the amount of plaintiff's benefit."

Plaintiff argues on appeal that dismissal was mandatory under *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977), *reh den* 402 Mich 953 (1977), and that the WCAB had no discretion to deny plaintiff's motion. We disagree.

This Court has held that the WCAB is not required to dismiss an appeal under MCL 418.862; MSA 17.237(862) where there is substantial compliance with the 70% rule and good cause can be shown for partial noncompliance. *Dean v Great Lakes Casting Co,* 78 Mich App 664, 666, 669; 261 NW2d 34 (1977). Dismissal is not required, for example, where payment was initially made but then inadvertently terminated. *Perry v Sturdevant Manufacturing Co,* 124 Mich App 11; 333 NW2d 366 (1983). In this case, defendants substantially complied with the 70% rule by paying plaintiff's benefits from October 30, 1980, until January or February of 1982. Reduced payments were made until May 17, 1982, when the WCAB issued its final opinion on defendants' appeal. While we believe that the chairperson of the WCAB exceeded his authority in informally and summarily consenting to a reduction in plaintiff's benefits, we cannot say that the defendants acted without good cause in relying upon that consent. Given the defendants' substantial compliance with the rule, the chairperson's approval of reduction and the concerns stated in its order denying plaintiff's motion to dismiss, we cannot say that the board abused its limited discretion under MCL 418.862;

MSA 17.237(862). We now turn to the merits of plaintiff's appeal.

II

Plaintiff contends that the board erred in concluding that plaintiff was not a DSS employee. We find no error.

Our review of decisions of the WCAB is limited. Findings of fact in workers' compensation proceedings are conclusive in the absence of fraud, Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861), and we will review the record only to determine whether there is any evidence to support the board's decision. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979); *Gibbs v General Motors Corp,* 114 Mich App 1, 3; 318 NW2d 565 (1982), *remanded on other grounds* 417 Mich 1048 (1983). We may, however, reverse the WCAB's decision where it is based on erroneous legal reasoning. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978).

In considering whether plaintiff was an employee of DSS the board made the following findings:

"The facts, as developed so far, establish that the state sponsored or participated in certain social welfare programs which provided that it would pay 'qualified' babysitters hired by persons eligible for the service. It is clear from the testimony of defendant's witnesses, and the exhibits introduced by plaintiff that a person eligible for the child care service (Mrs. Radomski) 'hires' the person who provides the service (plaintiff). Given plaintiff's admitted confusion, the testimony of the DSS employees, and especially that of Mrs. Radomski, it is concluded that Mrs. Radomski contacted plaintiff after having been given her name along with others. On the

same basis, it is concluded that Mrs. Radomski selected plaintiff and that she and plaintiff established plaintiff's hours and duties and that defendant did not supervise plaintiff.

\*   \*   \*

"As between defendant and plaintiff, the bargain was that the state would review plaintiff's qualifications and, if qualified, certify her. If certified, the state would place her name on a list and would pay her if she was selected to sit by an eligible person. Until plaintiff was selected, the state had no obligation to plaintiff except, possibly, to give out her name when her kind of service was requested. If plaintiff was selected, the state had no obligation to pay unless she was selected by a person meeting certain criteria set by the government. Until selected, the only thing offered by plaintiff was presumably to be available and, if selected, to render adequate child care. The state derived no benefit from plaintiff being available. Only when plaintiff sat for an eligible person and thereby assisted in getting that person back into the work force did the state derive a benefit from plaintiff."

Based on these facts, the board then considered the factors enunciated in *McKissic v Bodine,* 42 Mich App 203, 208-209; 201 NW2d 333 (1972), *lv den* 388 Mich 780 (1972), to determine whether plaintiff was an employee or an independent contractor. See also *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976).

A careful review of the record reveals that the board applied the proper legal standard to findings of fact supported by competent evidence. We cannot say that the board erred in finding, as a matter of law, that the relationship between DSS and plaintiff was more akin to that of employer-contractor than employer-employee. DSS exerted no control over plaintiff's duties nor did DSS have the right to hire or fire plaintiff. While DSS was responsible for plaintiff's compensation, it is also

clear that DSS intended payment to be made to plaintiff through Radomski since the draft was made payable to both. Materials or equipment were supplied by plaintiff or Radomski and not by DSS. Plaintiff held herself out to the public as a babysitter, a job customarily performed in the capacity of a contractor, and plaintiff could and did perform the same service for others. We agree with the board's conclusion that "defendant took permissible advantage of the act and structured its relationship with plaintiff to avoid liability to her under the Worker's Disability Compensation Act".

### III

Plaintiff alternatively argues that DSS is liable as a statutory principal. MCL 418.171; MSA 17.237(171) provides in relevant part:

"If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person,. in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him."

Under this statute, the liability of DSS as a statutory principal must be premised on four specific elements: (1) DSS must be subject to the provisions of the Worker's Disability Compensation Act of 1969, (2) Radomski must not be subject to the act

or must not have secured workers' compensation coverage, (3) there must be a contract between DSS and Radomski regarding plaintiff's services, and (4) plaintiff's injuries must have occurred while performing work under the contract between DSS and Radomski. *Davidson v Wayne County Bd of Road Comm'rs*, 86 Mich App 592, 597-598; 272 NW2d 740 (1978).

There is no dispute that DSS is subject to the provisions of the Worker's Disability Compensation Act and that Radomski is not. Nor is there any dispute that plaintiff's injuries were incurred while performing child care services for Radomski. We agree with the board's conclusion that the pivotal issue in determining whether DSS is liable as a statutory principal is whether there was a contract between DSS and Radomski regarding plaintiff's employment. The board found that any agreement entered into between DSS and Radomski could not be characterized as a contract because there was no consideration flowing between the parties. The board reasoned that Radomski was required to work under MCL 400.55a; MSA 16.455(1) (prior to the 1980 amendment) and the state thus received no legal benefit from Radomski's enrollment in the work training program. MCL 400.55a; MSA 16.455(1) is simply not applicable to the situation presented here. Both the preamended and amended versions of MCL 400.55a; MSA 16.455(1) apply to recipients of general public relief, more commonly referred to as "general assistance", and do not apply to recipients of ADC. Eligibility requirements for recipients of ADC are instead governed by MCL 400.56; MSA 16.456 and MCL 400.56g; MSA 16.456(7) and Radomski's duty, if any, to sign up for a work training program is a matter of federal law. MCL

400.56f; MSA 16.456(6). No evidence was introduced below to establish that Radomski was required to work under federal law. In fact, an employee of DSS testified at the hearing and the referee found on the record that Radomski did not obtain her job under the WIN program but voluntarily accepted employment under some other program after having been referred for an interview because of her known desire to obtain work. The board relied on erroneous legal reasoning in concluding that any contractual agreement between DSS and Radomski must fail for lack of consideration. We decline to remand for further findings or arguments on Radomski's duty to work inasmuch as the state, after having had ample notice and opportunity, has simply failed to come forth with any evidence or legal authority indicating the need for such a remand.

We conclude that the bargain struck between DSS and Radomski does constitute a contract within the meaning of MCL 418.171; MSA 17.237(171). DSS agreed to pay Radomski's child care expenses in return for her participation in a work training program. As far as can be ascertained from the record, Radomski was under no legal obligation to work and did so on a purely voluntary basis. The consideration flowing to DSS as a result of this agreement is the increased likelihood that Radomski, by developing work skills, training and experience might eventually succeed in becoming self-sufficient. Because plaintiff's injuries occurred in the performance of work bargained for between DSS and Radomski, we find that DSS is liable to plaintiff for workers' compensation benefits under MCL 418.171(1); MSA 17.237(171)(1).

The board did determine that as a result of the

accident plaintiff lost the industrial use of her left leg and arm and that her rate of compensation, if any, should be determined under MCL 418.359; MSA 17.237(359). We remand for entry of an order of compensation consistent with these findings. Such order shall include the granting of benefits for the appropriate nursing and custodial care required from September 21, 1977, in accordance with the applicable provisions of the act.

Reversed and remanded.

J. C. KINGSLEY, J., concurred.

CYNAR, J. *(concurring)*. While I embrace the result arrived at by the majority, I do so on entirely different grounds. In my opinion, the WCAB committed legal error in holding that plaintiff was an independent contractor and not an employee of defendant Department of Social Services (DSS).

The existence of an employer-employee relationship for workers' compensation purposes is determined by the economic realities of the situation. *Lambard v Saga Food Service, Inc,* 127 Mich App 262, 269; 338 NW2d 207 (1983); *Kain v Michigan,* 109 Mich App 290; 311 NW2d 351 (1981), *lv den* 413 Mich 910 (1982). This economic realities test focuses upon these four factors: (1) control of the worker's duties; (2) payment of wages; (3) right to hire, fire, and discipline; and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976). The economic realities test " 'views these elements as a whole, assigning primacy to no single one' ". *Nichol v Billot,* 406 Mich 284, 303; 279 NW2d 761 (1979), quoting *Schulte v*

*American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959) (Smith, J., *concurring).*

Although Mrs. Radomski had immediate control of plaintiff's duties, her control was not exclusive. Defendant DSS explained to plaintiff during the course of an interview what her duties as a child care aide might encompass. Mrs. Radomski arranged plaintiff's day-to-day activities on April 25, 1977, after plaintiff had begun performing her duties. Furthermore, the DSS was supposed to follow up on plaintiff's placement in Mrs. Radomski's home to assure that the placement was working out.

Plaintiff's wages were paid by defendant. The majority attaches significance to the fact that payment was effected by a draft made payable to both plaintiff and Mrs. Radomski; I do not. This is a test of economic realities, not economic appearances, and the reality was that plaintiff was being compensated by defendant. Mrs. Radomski was not even aware of what plaintiff's wages were going to be in connection with these services.

Mrs. Radomski's ability to hire and fire plaintiff was not unqualified. She had to meet eligibility requirements to receive the state-funded service and could select only from a pool of individuals chosen by the state. Mrs. Radomski could fire plaintiff, but the DSS had the ability to decertify plaintiff.

There is little doubt that the performance of plaintiff's duties was an integral part of DSS business. It is appropriate to view the provision of state-funded child care services as part of the broader social welfare system, with the specific goal of client self-sufficiency.

On balance these factors reveal a situation which, although containing certain earmarks of an

independent contractor relationship, more realistically suggests an employer-employee relationship. I would hold that plaintiff, having been compensated by the state, subject to residual control by the state, and performing functions in furtherance of state goals, was an employee of defendant DSS for workers' compensation purposes.