WALKER v DEPARTMENT OF SOCIAL SERVICES

Docket No. 78249. Argued April 7, 1987 (Calendar No. 1). Decided August 4, 1987.

Cassie Walker sought workers' compensation benefits, alleging disability because of a back injury which arose in the course of her employment as a chore-service provider for an invalid welfare recipient. A hearing referee granted benefits, finding that the Department of Social Services was the plaintiff's employer for purposes of the workers' compensation act and that benefits were payable solely on the basis of the plaintiff's back condition. The Workers' Compensation Appeal Board affirmed. The Court of Appeals, GRIBBS, P.J., and HOOD and DAVIS, JJ., affirmed in an opinion per curiam (Docket No. 81963). The defendant appeals.

In an opinion by Justice ARCHER, joined by Justice LEVIN, with Justices BOYLE, CAVANAGH, and GRIFFIN concurring in parts II and III only, the Supreme Court *held:*

On the basis of the undisputed underlying facts, the Department of Social Services was the plaintiff's employer for purposes of the workers' compensation act.

The Workers' Compensation Appeal Board is exclusively empowered to make factual determinations in workers' compensation cases. While the question whether the DSS was the plaintiff's employer is an issue of law, properly left to determination by the Supreme Court, the Court lacks authority to make the determination on the basis of insufficient factfinding. Rather, the determination must be made on the basis of facts agreed upon. In this case, upon completion of a review of the undisputed facts, the board concluded that the DSS was the plaintiff's employer.

Affirmed.

Chief Justice RILEY, joined by Justice BRICKLEY, dissenting, stated that upon application of the economic-reality test to the findings of fact of the Workers' Compensation Appeal Board, there is insufficient evidence to establish the existence of an employment relationship between the plaintiff and the defendant so as to entitle the plaintiff to workers' compensation benefits.

An employee-employer relationship must exist before benefits

or other rights accrue to a claimant under the Workers' Disability Compensation Act. In determining whether such a relationship exists, the economic-reality test is utilized. The test is a broad approach which looks to the totality of the circumstances surrounding the employment situation and provides a rational framework within which the existence of an employer-employee relationship may be determined in a manner consistent with the act. A claimant must establish entitlement to such benefits by a preponderance of the evidence. Four key factors are considered: control of the worker's duties; payment of wages; the right to hire, fire, and discipline; and whether performance of the duties is an integral part of the employer's business toward the accomplishment of a common goal. The factors are viewed in their entirety, with no single factor being assigned primacy. Application of the test necessarily requires a subjective determination.

The scope of review of a decision of the Workers' Compensation Appeal Board is limited, and a reviewing court is bound by the WCAB's findings of fact. In this case, upon reviewing the totality of the circumstances in light of the economic-reality factors, it must be concluded that the plaintiff failed to establish, by a preponderance of the evidence, the existence of an employment relationship with the DSS for purposes of the workers' compensation act, and thus has not established a right to benefits.

149 Mich App 436; 386 NW2d 205 (1986) affirmed.

*Pianin & Paull, P.C.* (by *Michael R. Sugar*), for the plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *James A. Sullivan* and *David P. Grunewald*), for the defendants.

ARCHER, J.

I

Every employer, public and private, shall be subject to the provisions of Michigan's Workers' Disability Compensation Act. MCL 418.111, 418.171; MSA 17.237(111), 17.237(171).

Typically, a private person who desires to follow

the Workers' Disability Compensation Act will purchase a workers' compensation insurance policy to protect against personal liability in the event an employee becomes injured on the job and is entitled to workers' compensation disability benefits.

In this case, Mrs. Willie L. Johnson is a welfare recipient. One of her legs was amputated, she is blind in one eye and uses a wheelchair. Mrs. Johnson received public assistance from the Department of Social Services. The DSS knew the status of Mrs. Johnson's finances and would know if she had the ability to pay for a workers' compensation insurance policy. Moreover, the department was in a superior position to know the laws of the State of Michigan and, in particular, the Workers' Disability Compensation Act. The department could advise Mrs. Johnson to purchase insurance, could provide funds for her to pay for the insurance, or could provide benefits when needed from other sources. The DSS did not advise Mrs. Johnson to purchase insurance or provide funds for her to purchase insurance.

I would hold that the DSS is estopped from denying liability. See also 1C Larson, Workmen's Compensation Law, §§ 46.45-46.47, pp 8-274 to 8-283.

II

I find it unnecessary, however, to reach the estoppel remedy because I believe that the hearing referee, the Workers' Compensation Appeal Board, and the Court of Appeals were correct and that their decisions should be affirmed. They held that Cassie Walker was an employee of the DSS.

Plaintiff, Cassie Walker, had known Mrs. Johnson as a neighbor. On occasion, Mrs. Walker had

run errands for Mrs. Johnson. Subsequently, Mr. Emberg from the DSS, at Mrs. Johnson's request, interviewed Mrs. Walker and asked if she would accept the job of caring for Mrs. Johnson. Mrs. Walker accepted and signed payroll papers the same day.

Mrs. Walker's job responsibilities involved lifting, going up and down stairs to do laundry, mopping, walking to the doctor's office on behalf of Mrs. Johnson, and helping her in and out of the wheelchair.

Although Mrs. Walker's day-to-day schedule was under the direction of Mrs. Johnson, the general directives were set by the department. Mrs. Walker had direct contact with Mr. Emberg or Mr. Solomon, a supervisor at the DSS. She was paid monthly by checks made payable to both Mrs. Walker and Mrs. Johnson, which were sent to the latter's home.

During the course of her employment, Mrs. Walker fell down the basement stairs and injured her back. Subsequently, she filed a petition for hearing with the Bureau of Workers' Disability Compensation, naming the Department of Social Services as her employer.

In ordering the DSS to pay benefits to Mrs. Walker, the hearing referee held:

> It is found that the State of Michigan, Department of Social Services, was plaintiff's employer for Workers' Compensation purposes. *Askew v Macomber,* 398 Mich 212 [247 NW2d 288] (1976). Indicia to substantiate this finding are: (1) no explicit agency agreement has been shown to exist between defendant and Mrs. Johnson. (2) Plaintiff received her wages by means of a check drawn on defendant and payable to her and Mrs. Johnson. (3) Prior to employment plaintiff was interviewed by defendant's agent who also explained the job

duties. (4) Defendant's agents would observe plain-
tiff's job performance monthly and if any problem
arose plaintiff would contact defendant.

Finally, benefits are payable solely on the basis
of plaintiff's back condition. It has not been dem-
onstrated that any other alleged condition was
work related or aggravated by employment.

The defendants subsequently appealed to the
Workers' Compensation Appeal Board. While af-
firming the hearing referee's decision, the WCAB
also declared, in pertinent part:

> Although not raised by appellant, we take note
> of the recent case of *Morin v Dep't of Social
> Services,* 134 Mich App 834 [352 NW2d 325] (1984)
> and find that it is distinguishable from the case at
> bar.
>
> * * *
>
> In the instant case, the Department of Social
> Services played a more direct role in the selection
> of the plaintiff. Ms. Walker was not selected from
> a list provided by the Department of Social Ser-
> vices. Mr. Emberg, a Department of Social Ser-
> vices caseworker, hired the plaintiff for the posi-
> tion and instructed her about her duties.
>
> . . . [I]n the instant case, there is no evidence
> that plaintiff held herself out to the public as a
> nurse's aide or housekeeper or that she performed
> such services for others . . . .
>
> . . . [T]he Department of Social Services
> exerted . . . control over [Mrs. Walker's]
> duties . . . .
>
> Finally, we must note that this Board and the
> Court of Appeals in *Morin* attached some signifi-
> cance to the manner of payment, which was iden-
> tical to the method of payment in the case at bar.
> However, we do not believe that this single factor
> ought to be controlling. As noted in *Askew, supra,*
> citing payment of wages as one factor to be consid-
> ered, the economic reality test views these ele-

ments as a whole, assigning primacy to no single one. [3]98 Mich 217-218.

In conclusion, our review of the facts of this case, even in the light of *Morin, supra,* compels us to conclude that defendant was plaintiff's employer for workers' compensation purposes.

The defendants then appealed to the Court of Appeals. The Court of Appeals agreed with the WCAB's distinction between *Morin* and the case at bar. In addition to affirming the *Morin* distinction, the Court of Appeals cited other factors which helped it conclude that Mrs. Walker was employed by the defendant for purposes of the Workers' Disability Compensation Act:

> In the case at bar, Mrs. Johnson did not hire plaintiff. Although plaintiff was interviewed at Mrs. Johnson's suggestion, she was hired by DSS who informed her that her responsibility was to care for Mrs. Johnson's needs. Also, while plaintiff's day-to-day duties were supervised by Mrs. Johnson, a caseworker visited the Johnson household at least once a month and reviewed plaintiff's performance. Further, after plaintiff was injured, her hours were shortened by the DSS, not by Mrs. Johnson. Moreover, plaintiff informed the DSS that her injury prevented her from continuing her employment.
>
> Concerning the manner in which plaintiff was paid, we note that the "reality" was that plaintiff was compensated by defendant. See *Morin, supra,* p 846 (CYNAR, J., concurring). We also believe that the services plaintiff performed are part of the social welfare system's broader goal of promoting client self-sufficiency. Therefore, we are compelled to find that plaintiff's services were an integral part of DSS business. *Id.*
>
> Viewing the facts of this case as a whole, we conclude that the plaintiff herein was employed by defendant for purposes of the Workers' Disability

Compensation Act. [149 Mich App 436, 442-443; 386 NW2d 205 (1986).]

Despite these reasons cited by the hearing referee, the WCAB, and the Court of Appeals, the dissent concludes that there is insufficient evidence to establish the existence of an employment relationship between plaintiff and defendant. Nowhere in its opinion does the dissent conclude that the WCAB applied an erroneous legal standard in making its decision. In fact, the dissent's conclusion appears to be exclusively based upon its perception that there was insufficient factfinding on the part of the WCAB. For example, it states in pertinent part:

> The board's findings which are relevant to this factor [control of the worker's duties] *are limited* and indicate that a DSS caseworker, Mr. Emberg, explained to plaintiff what her duties would be when she was interviewed for the job, but there is *no evidence* indicating that Mr. Emberg, or any other DSS employee, subsequently supervised the plaintiff in performing those duties. A DSS caseworker would visit Mrs. Johnson's home once a month during plaintiff's tenure as Mrs. Johnson's chore-service provider, but the purpose of those visits is *unexplained.*
>
> *     *     *
>
> Although the DSS caseworker may have initially informed plaintiff what her job responsibilities would entail, there is *no evidence* that any DSS agent subsequently exercised any supervisory authority over plaintiff.
>
> *     *     *
>
> Although Mr. Emberg was present and asked plaintiff if she would take the job, *it is not at all clear* whether that decision was solely his or to what extent Mrs. Johnson was involved in that decision. . . . *The record does not indicate* what

authority, if any, Mr. Emberg had to refuse plaintiff the job had only Mrs. Johnson been inclined to hire her, or whether he could have hired her over Mrs. Johnson's objection.

\*    \*    \*

*The evidence is insufficient* to permit us to find the existence of such a relationship [an employee-employer relationship for workers' compensation purposes]. [*Post,* pp 404-406. Emphasis added.]

While the question whether the DSS is the plaintiff's employer for purposes of workers' compensation is an issue of law properly left to our determination,[1] we lack the authority to make such a determination on the basis of insufficient factfinding. Instead, the determination of whether the defendant should be labeled an "employer" within the meaning of the workers' compensation law is to be made on the basis of the *agreed* facts. See *Renfroe v Higgins Rack Coating & Mfg Co, Inc,* 17 Mich App 259, 262; 169 NW2d 326 (1969); *Askew, supra,* 217, n 6. In the case at bar, there is no dispute as to any of the underlying facts.

As noted by Justice RYAN in *Williams v Lang (After Remand),* 415 Mich 179, 183; 327 NW2d 240 (1982):

The Michigan Constitution makes it clear that the Workers' Compensation Appeal Board is exclusively empowered to make factual determinations in workers' compensation cases and that this Court is absolutely without authority to do so. Const 1963, art 6, § 28. *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975).

\*    \*    \*

While it may be efficient and convenient for the Court to do the WCAB's factfinding in this case, it is unconstitutional to do so.

___

[1] *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976).

### III

Accordingly, I would affirm the decisions of the hearing referee, the Workers' Compensation Appeal Board, and the Court of Appeals.

LEVIN, J., concurred with ARCHER, J.

BOYLE, J. (*concurring*). We concur in parts II and III of Justice ARCHER's opinion.

CAVANAGH and GRIFFIN, JJ., concurred with BOYLE, J.

RILEY, C.J. The question presented in this case is whether a chore-service provider to a welfare recipient is an employee of the Department of Social Services for purposes of workers' disability compensation. We would hold that on the basis of the findings of the Workers' Compensation Appeal Board, the evidence is insufficient to establish that the DSS was plaintiff's employer.

### I

In 1976, plaintiff learned through a mutual friend that Mrs. Willie L. Johnson, an invalid welfare recipient for whom plaintiff had run errands from time to time, needed someone to care for her. On learning that plaintiff would be willing to provide such care, Mrs. Johnson arranged an interview with plaintiff and Mr. Emberg, a DSS caseworker. Mr. Emberg explained to plaintiff that her job would be to look after Mrs. Johnson's needs by housecleaning, doing her laundry, taking her to the doctor, and providing personal care, in addition to running her errands. Plaintiff accepted the proposed arrangements and began working immediately.

Plaintiff worked in Mrs. Johnson's home forty

hours per week. A DSS caseworker would visit Mrs. Johnson's home routinely once a month. Additional visits occurred when plaintiff requested them on Mrs. Johnson's behalf, or when plaintiff encountered a problem on the job.

In 1978, while working in Mrs. Johnson's home, plaintiff was injured in a fall down the basement stairs. Plaintiff notified a DSS caseworker, as well as other DSS employees, about the accident. As a result of a back injury sustained in the accident, plaintiff's work schedule was reduced to twenty-five hours per week. In October, 1978, plaintiff notified the DSS that she could no longer work for Mrs. Johnson because of the back injury.

On August 2, 1979, plaintiff filed a petition for hearing with the Bureau of Workers' Disability Compensation. She named the State of Michigan, Department of Social Services, as her employer, and alleged that she was injured during the course of her employment on October 16, 1978. At a hearing held on April 15, 1980, defendant denied, inter alia, that it was plaintiff's employer. In a decision issued May 8, 1980, the hearing referee found that defendant was plaintiff's employer for workers' compensation purposes and that benefits were payable solely on the basis of plaintiff's back condition. Defendant was ordered to pay plaintiff compensation at the rate of $105 per week.

Defendant appealed the hearing referee's decision to the Workers' Compensation Appeal Board. Defendant argued that the hearing referee erred in holding defendant to be plaintiff's employer, and also in holding that plaintiff was disabled as a result of her back condition. The board unanimously affirmed the hearing referee's decision.[1] The case came before the Court of Appeals by

---

[1] *Walker v Dep't of Social Services*, 1984 WCABO 739.

leave granted where defendant only challenged the board's holding that defendant was plaintiff's employer. The Court of Appeals affirmed the board's ruling.[2] We granted defendant's application for leave to appeal to this Court on June 24, 1986.[3]

II

Before benefits or other rights accrue to a claimant under the Workers' Disability Compensation Act, MCL 418.101 et seq.; MSA 17.237(101) et seq., an employee-employer relationship must exist between the claimant and the defendant.[4] The act is predicated on the existence of such a relationship. Furthermore, a claimant for workers' compensation benefits must establish entitlement to such benefits by a preponderance of the evidence. *Aquilina v General Motors Corp,* 403 Mich 206; 267 NW2d 923 (1978).

It is well established that Michigan applies the so-called "economic reality" test to determine whether an employee-employer relationship exists between a workers' compensation claimant and a proposed employer.[5] There is no ultimate test under the economic-reality theory. The test is a broad approach which looks to the totality of the circumstances surrounding the employment situation.[6] It provides a rational framework within which the existence or nonexistence of the em-

[2] *Walker v Dep't of Social Services,* 149 Mich App 436; 386 NW2d 205 (1986).

[3] *Walker v Dep't of Social Services,* 425 Mich 872 (1986).

[4] See *Erickson v Goodell Oil Co,* 384 Mich 207; 180 NW2d 798 (1970); *Davidson v Co Bd of Road Comm'rs,* 86 Mich App 592; 272 NW2d 740 (1978).

[5] For a comprehensive history of the adoption of the economic-reality test in Michigan, see *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972), lv den 388 Mich 780 (1972).

[6] *Farrell v Dearborn Mfg Co,* 416 Mich 267, 276; 330 NW2d 397 (1982).

ployee-employer relationship is determined in a
manner consistent with the objectives of the Work-
ers' Disability Compensation Act.

The test was initially described by Justice Talbot
SMITH, dissenting, in *Powell v MESC,* 345 Mich
455, 478-479; 75 NW2d 874 (1956):

> The test employed is one of economic reality. It
> looks at the task performed, whether or not it is a
> part of a larger common task, "a contribution to
> the accomplishment of a common objective."
> . . . The test is far from the common-law test of
> control, since "the act concerns itself with the
> correction of economic evils through remedies
> which were unknown at the common
> law." . . . The test, rather, looks at the workmen,
> to see whether or not their work can be character-
> ized "as a part of the integrated unit of
> production," . . . and whether "the work done, in
> its essence, follows the usual path of an
> employee." . . . In applying such test, control is
> only one of many factors to be considered. The
> ultimate question is whether or not the relation-
> ship is of the type to be protected. This is a matter
> of fact, not of terminology. [Citations omitted.]

The test's development has lead to consideration
of four key factors:

(1) control of the worker's duties,
(2) payment of wages,
(3) the right to hire, fire, and discipline, and
(4) whether performance of the duties is an integral
part of the employer's business toward the accomplish-
ment of a common goal. *Askew v Macomber,* 398 Mich
212; 247 NW2d 288 (1976).[7]

---

[7] Additional factors have been considered when the question con-
cerns the nature of the employment relationship, i.e., whether the
claimant is an employee or an independent contractor, rather than
the existence of the relationship. See *Nichol v Billot,* 406 Mich 284;
279 NW2d 761 (1979); *McKissic,* n 5 *supra.* In the instant case,

The test views these elements in their entirety, assigning primacy to no single one. *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959). Although these factors represent an attempt to objectify the analysis, application of the test necessarily requires inductive reasoning which results in a subjective determination as to the existence or nonexistence of an employment relationship.

### III

In applying the economic-reality test to the instant case, we are mindful of the limited scope of our review. This Court's review of WCAB proceedings is limited to reviewing questions of law involved in any final order of the appeal board and to determining whether there is any competent evidence to support the board's findings of fact or whether there is any fraud associated with those findings. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Aquilina, supra,* 213. In the absence of fraud, we are bound by the board's findings of fact. *Askew, supra,* 217. However, the board's application of legal standards, such as the economic-reality test, to those facts are reviewable as a matter of law. *Id.;* see also *Deziel v Difco Laboratories, Inc,* 394 Mich 466, 475; 232 NW2d 146 (1975).[8]

In the instant case, we disagree with the WCAB that the economic reality of plaintiff's employment situation indicates that defendant was plaintiff's employer for workers' compensation purposes. In applying the test, the board noted the following

defendant has not argued that plaintiff was an independent contractor.

[8] See *Neff v Hillcrest Drive-In,* 72 Mich App 463, 467; 250 NW2d 71 (1976), vacated 400 Mich 804 (1977).

findings which the hearing referee set forth to substantiate her ruling that defendant was plaintiff's employer:

(1) [N]o explicit agency agreement has been shown to exist between defendant and Mrs. Johnson. (2) Plaintiff received her wages by means of a check drawn on defendant and payable to her and Mrs. Johnson. (3) Prior to employment plaintiff was interviewed by defendant's agent who also explained job duties. (4) Defendant's agents would observe plaintiff's job performance monthly and if any problem arose plaintiff would contact defendant.

In concluding that these facts established the employment relationship, the board distinguished the instant case from *Morin v Dep't of Social Services,* 134 Mich App 834; 352 NW2d 325 (1984). In *Morin,* the plaintiff was certified by the DSS as a day-care aide to provide in-home child care for DSS clients at the state's expense. The plaintiff was hired by a qualified ADC recipient to care for her two children while she attended a work-training program. The plaintiff was selected from a list of names of state certified aides. The plaintiff was paid by way of a check made payable to both the plaintiff and the ADC recipient.

The plaintiff filed a claim with the bureau against the DSS for compensation benefits after being injured in an automobile accident which occurred while she was working. A hearing referee found that the DSS was the plaintiff's employer and awarded the plaintiff compensation benefits. The WCAB reversed, ruling that the plaintiff was an independent contractor hired by the ADC recipient and that she was not an employee of the DSS.[9] The

---

[9] The board considered the more extensive set of factors enunciated

Court of Appeals affirmed and agreed that the relationship between the DSS and the plaintiff was more akin to that of employer-contractor than employer-employee.

In the instant case, the board distinguished *Morin,* finding that here the DSS played a more direct roll in selecting the plaintiff, that Mr. Emberg actually hired the plaintiff and instructed her about her duties. In further contrast with *Morin,* the plaintiff had not held herself out to the public as a nurse's aide or a housekeeper, nor did she perform such services for others. With regard to the control factor and the right to hire and fire the plaintiff, the board simply found that the instant case was unlike *Morin,* where the DSS exerted no control over the plaintiff's duties and did not have the right to hire or fire the plaintiff. The board also acknowledged that the manner of payment was identical to the manner of payment in *Morin,* where the Court of Appeals found that the DSS was responsible for the plaintiff's compensation. The Court of Appeals panel in the instant case similarly distinguished *Morin* in affirming the board's decision.

We agree that *Morin* is distinguishable and that it is not controlling in this case. However, we believe that upon viewing the totality of the circumstances, in light of the economic-reality factors, plaintiff has failed to establish by a preponderance of the evidence the existence of an employment relationship with the DSS. With regard to the first factor, i.e., control of the worker's duties, both the Court of Appeals and the WCAB concluded that the DSS controlled the performance of plaintiff's duties. We believe, however, that the board's findings of fact fail to support its conclusion and

in *McKissic,* n 5 *supra,* because of defendant's argument that the plaintiff was an independent contractor.

that it is not at all clear on the record before us who actually controlled plaintiff's duties. The board's findings which are relevant to this factor are limited and indicate that a DSS caseworker, Mr. Emberg, explained to plaintiff what her duties would be when she was interviewed for the job, but there is no evidence indicating that Mr. Emberg, or any other DSS employee, subsequently supervised the plaintiff in performing those duties. A DSS caseworker would visit Mrs. Johnson's home once a month during plaintiff's tenure as Mrs. Johnson's chore-service provider, but the purpose of those visits is unexplained.

Furthermore, we are unable to agree with the board's conclusion that these findings lead to an inference that the DSS controlled plaintiff's daily activities. To the contrary, these findings indicate that the DSS exerted virtually no control over plaintiff's daily work. Although the DSS caseworker may have initially informed plaintiff what her job responsibilities would entail, there is no evidence that any DSS agent subsequently exercised any supervisory authority over plaintiff. Thus, we believe that consideration of the control factor does not weigh in favor of finding the existence of an employment relationship in this case.

As to the payment of wages, the method of payment by way of a check drawn on the DSS and issued jointly to Mrs. Johnson and plaintiff indicates that the DSS was actually paying plaintiff's wages. Although this factor is some indicia of an employment relationship, it carries no special weight and, standing alone, is not dispositive. *Schulte, supra.*

The WCAB and the Court of Appeals also concluded that Mr. Emberg actually hired plaintiff. We find it difficult to agree with that conclusion. Mrs. Johnson initially contacted plaintiff and

asked her to come to her home for an interview. Although Mr. Emberg was present and asked plaintiff if she would take the job, it is not at all clear whether that decision was solely his or to what extent Mrs. Johnson was involved in that decision. Moreover, it is the *right* to hire, fire, and discipline the employee that is relevant. The record does not indicate what authority, if any, Mr. Emberg had to refuse plaintiff the job had only Mrs. Johnson been inclined to hire her, or whether he could have hired her over Mrs. Johnson's objection. We believe that the more reasonable inference to be drawn on the record presented is that the decision to hire plaintiff was a decision mutually agreed upon by Mr. Emberg and Mrs. Johnson. In any event, the board's findings are simply inadequate to support the conclusion that the DSS actually possessed the authority to hire, fire, and discipline plaintiff. Thus, we view the board's findings on this factor as inconclusive.

Finally, with regard to the fourth economic-reality factor, the WCAB has not made any relevant findings. Defendant vigorously argues that it is not in the business of providing chore-service providers and that its involvement in plaintiff's selection was for the sole purpose of safeguarding the disbursal of its funds. On the other hand, plaintiff contends that her work was an essential part of the DSS' responsibility to provide services to its clients. However, no proofs were submitted on this factor at the administrative hearing, and the board made no findings regarding whether plaintiff's work was an integral part of the DSS' business. Therefore, we are unable to conclude whether this factor weighs in either plaintiff's or defendant's favor.

Upon viewing the totality of the circumstances as reflected in the board's findings, we believe that

it is not the "economic reality" that defendant was plaintiff's employer for workers' compensation purposes. The evidence is insufficient to permit us to find the existence of such a relationship.

We reiterate that plaintiff bears the burden of establishing her right to compensation benefits and that we are bound by the WCAB's findings in determining whether she has met that burden. In light of the board's findings in this matter, we believe plaintiff has failed to establish by a preponderance of the evidence the existence of an employment relationship with defendant. Thus, she has not established her right to receive compensation benefits from defendant.

Defendant further argues that finding plaintiff to be an employee of the DSS would contravene Const 1963, art 11, § 5. However, we need not address this issue, given our conclusion that plaintiff was not an employee of the DSS under the economic-reality test.

Plaintiff alternatively argues that defendant would be liable for her workers' compensation if it were found to be a statutory principal pursuant to MCL 418.171(1); MSA 17.237(171)(1).[10] This issue was not presented to the WCAB, nor was it resolved

---

[10] MCL 418.171(1); MSA 17.237(171)(1) provides in pertinent part:

If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal.

by the Court of Appeals. There being no record for us to review, we decline to address it.

IV

In summary, we conclude, that upon application of the economic-reality test to the WCAB's findings of fact, there is insufficient evidence to establish the existence of an employment relationship between plaintiff and defendant. Therefore, plaintiff is not entitled to receive workers' compensation benefits from defendant. The decision of the Court of Appeals and the WCAB's award of benefits to plaintiff should be reversed.

BRICKLEY, J., concurred with RILEY, C.J.